Murray, Executrix, Appellant, *v.* G. F. Higgins Co.

Argued March 26, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Francis A. Wolf*, for appellant.—The Higgins Co., appellee, had no insurable interest in the life of Murray, as an employee, and, without more, was not entitled, as against his personal representative, to retain the pro-

ceeds of a policy of insurance taken out by it on his life: Gilbert v. Moose, 104 Pa. 74; Ruth v. Katterman, 112 Pa. 251; Brennan v. Franey, 142 Pa. 301; Riner v. Riner, 166 Pa. 617; Taussig v. Trust Co., 231 Pa. 16.

The evidence in this case is that Murray was not indebted to the Higgins Co. at the time of the issuance of the insurance policy.

The evidence was not such as justified the court in holding, as matter of law, that Murray was such an employee as gave the Higgins Co. an insurable interest in his life: U. S. Life Ins. Co. v. Brown, 270 Pa. 270.

*Ernest Frey,* with him *R. A. & James Balph,* for appellee.—The Higgins Co. had an insurable interest in the life of Murray, he being directly indebted to the company on account of the purchase of stock at the time the policy was applied for: Lenig v. Eisenhart, 127 Pa. 59.

The Higgins Co. had a further insurable interest in the life of Murray as a director and executive officer on whose skill, experience and acquaintanceship with new sources of business the success of the company was largely dependent: Life Ins. Co. v. Union Assn., 273 Pa. 554.

OPINION BY MR. JUSTICE FRAZER, May 12, 1930:

James M. Murray died July 23, 1926. On September 26, 1923, he had taken out a policy of life insurance in which the G. F. Higgins Company, designated as his "employers," was named beneficiary. On the death of Murray, the insurance company paid the amount of the policy to the beneficiary and the executrix of decedent subsequently instituted this action against the beneficiary to recover the amount so paid. Plaintiff's claim is based on the theory that the G. F. Higgins Company had no insurable interest in the life of Murray. The trial judge held otherwise, and from refusal of the court to take off a judgment of nonsuit, this appeal was taken.

P. A. Edwards and Albert F. Bruckman were owners of the capital stock of the G. F. Higgins Company, a corporation engaged in the business of installing and repairing heating systems in buildings, whose principal office was in the City of Pittsburgh. On August 11, 1923, an agreement was entered into between Murray, Edwards, Bruckman and the corporation, wherein it was recited that the latter tendered to Murray the position of superintendent and estimator. As such officer he was to devote his entire time to duties required of him, "such as superintending, estimating, soliciting, etc.," and "put forth his best efforts at all times with a view to aid in the management and progress of the company in every way." The compensation for his services was to be similar to that paid Edwards and Bruckman, respectively, which at the time was $75 a week, and also one-third of the company's profits. In addition to this amount and "as further consideration of Murray associating himself with the company," the latter agreed to sell to him 65 shares of its unissued capital stock at $50 a share and "as evidence of good faith," upon his part, Murray obligated himself to make an initial purchase for cash of 20 of the 65 shares not later than October 21, 1923, the remaining 45 shares covered by the agreement to be paid for by Murray subsequently out of his share of the profits realized from the business of the corporation. It was further agreed among the parties that the other two stockholders would sell to Murray a fixed proportion of their own shares so that the capital stock would be finally owned by the three persons named in equal proportions, Murray to receive his full one-third share of the profits of the business from the date of the agreement regardless of how the shares were held. A further clause provided that in case Murray severed his connection with the active affairs of the company, the agreement would immediately terminate, it being stipulated that what was termed "the privilege of buying this stock" was granted to Murray, "as part con-

sideration of his active participation in conducting the business and his death at any time automatically cancels this privilege."

It appears from the foregoing provisions of the written contract between the parties that Murray was more than an employee of the corporation. He became, in effect, the equitable owner of one-third of the property of the company from the time the agreement was entered into, even though he had not at that time paid for a single share of the stock. In addition to the requirements of the contract as to the nature of the service he was obliged to render, we find oral testimony of plaintiff's witnesses to the effect that Murray superintended all work and had charge of employees engaged on different contracts, was vice-president and a director of the company, signed checks and contracts for the company, solicited new business and interviewed contractors, which latter services were of particular value to the company, owing to his wide acquaintance with contractors and property owners upon whom the company was dependent to secure contracts for installation of heating and ventilating appliances, and further that, because of the extensive personal acquaintance of Murray and the fact that new business was obtained to a large extent through his individual efforts, his death would mean a serious future loss to the corporation. The secretary and treasurer of the company, called by plaintiff, testified on cross-examination, with reference to the services of Murray: "When we asked him to come with our company we thought him the best fitted man in the City of Pittsburgh for that job, and after having once acquired him if we were to lose his service and his advice we would sustain a loss. We brought that man in there for good, for the good of the company, and we expected to get some years of service out of him."

The foregoing facts and circumstances are clearly sufficient to give the company an insurable interest in decedent's life. The fact that the business could and did

exist after his death is not necessarily proof that his services were not of such peculiar value as to give the corporation an insurable interest in his life. Obviously his death would at least cause a substantial loss to the stockholders, and that of itself is ample to sustain the judgment entered by the court below. The Insurance Code of May 17, 1921, P. L. 682, section 412, defines an insurable interest as meaning "a lawful economic interest in having the life of the insured continue, as distinguished from an interest which would arise only by the death of the insured." In U. S. Life Ins. Co. v. Brown (No. 2), 270 Pa. 270, it was held that a mere designation of an employee as "manager of a storage house" was not sufficient to show an insurable interest, in the absence of proof that the success of the business was dependent upon the life of such employee. We there said, however, (page 272) that "To sustain a contract of this character [life insurance], it must further appear that there is a real concern in the life of the party named, whose death would be the cause of substantial loss to those who are named as beneficiaries. This does not follow the cessation of ordinary service, but arises where the success of the business is dependent on the continued life of the employee."

Following this same principle, it was also stated, in United Security Life Insurance & Trust Co. v. Perugini Union Mutual Relief Assn., 273 Pa. 554, (page 557) " 'It is enough that in the ordinary course of events, financial loss or disadvantage will naturally and probably result from the death of the one whose life is insured to the person obtaining the policy' (20 Cyc. 706)," and that the language used in the Insurance Code quoted above was (page 558) "merely expressing more broadly what has in effect been declared by the Pennsylvania cases: United Sec. L. I. & T. Co. v. Brown (No. 2), supra."

Under the circumstances stated above and shown by the record, the Higgins Company had an insurable in-

terest in the life of Murray, accordingly it becomes unnecessary to discuss the question whether the relationship of debtor and creditor existed under the contract, or whether the effect of the release given by Murray of all his rights under the agreement, after illness, prevented him from carrying it out.

The judgment is affirmed.