## Sandlin's Adm'x v. Allen.
## Oetter et al. v. Sandlin's Adm'x.
### (Decided Jan. 28, 1936.)

EDWARD P. HUMPHREY and MARVIN H. TAYLOR for Sandlin's Adm'x.

W. S. HEIDENBERG and WM. MIX, for Elizabeth Oetter and others.

JOHN W. WATKINS for J. D. Allen.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

We will dispose of these cases in one opinion, first considering Allen's judgment.

Dr. J. D. Allen and Dr. W. H. Allen, brothers, were the owners of certificates of stock of the value of $2,500 in the Allen-Sandlin Laboratories, a domestic corporation. The corporation engaged in operating a laboratory and manufactured certain medical preparations. Everette H. Sandlin was employed by it and in charge of its business and laboratories. He was a technician "possessing knowledge and skill in the manufacture of medicinal preparations to a marked degree." The success of the business of the corporation depended entirely on him. "Realizing that the death of Sandlin would result in irreparable loss to the Allen-Sandlin Laboratories, and that in all probability the business would be discontinued, as there was no one else that could carry on the operation, and the stock in the corporation owned by Drs. Allen would then become worthless," to protect the value of his stock and his interest in the corporation, Dr. J. D. Allen caused the Manhattan Life Insurance Company of New York to issue to him a policy of $2,500 on the life of Sandlin, in which Dr. J. D. Allen was the beneficiary. Allen paid the premiums on the policy as they matured.

On the 22d day of January, 1934, Sandlin purchased of Drs. J. D. and W. H. Allen their stock in the Allen-Sandlin Laboratories and executed and delivered to Dr. J. D. Allen therefor, a note of $2,000 payable three years after date. In the afternoon of the day he executed and delivered the note, Sandlin sustained an injury in an automobile accident resulting in his death.

His administratrix filed this action in equity to settle his estate. It was referred to the master commissioner to audit, state, and settle his estate, with directions to report to the court any evidence produced by any interested party.

Dr. J. D. Allen lodged with the commissioner his $2,000 note which was reported allowed as a claim against Sandlin's estate. The Administratrix filed an exception to the allowance of the note as a debt against the decedent's estate. In her exception she stated the facts and circumstances under which the policy of $2,500 was secured by Dr. Allen on the life of Sandlin. She filed an amended petition in which she reiterated the facts stated in her exception. No other evidence was offered to sustain her exception or to support the allegations of her amended petition. The court on the facts

thus presented overruled her exception and allowed the note as against the estate of Sandlin. Appealing therefrom, she is here insisting that Dr. Allen only had in the life of Sandlin the insurable interest of a creditor and his right to collect and withhold from his estate the proceeds of the policy is limited to the amount of his debt; that the proceeds in excess of the debt belong to Sandlin's estate.

The determinate questions are: Did Dr. Allen have an insurable interest in the life of Sandlin? And, is he entitled to the proceeds of the policy as against Sandlin's estate?

It is an accepted rule that "a person has an insurable interest in the subject matter insured where he has such relation or connection with, or concern in it, that he will derive pecuniary benefit or advantage from its preservation or will suffer pecuniary loss from its destruction, termination or injury by the happening of the event insured against. * * * A person has an insurable interest in the life of another, where he is a creditor or surety of the latter or otherwise has a pecuniary interest in the continuance of his life." "Whoever may be fairly said to have reasonable expectations of deriving pecuniary advantage from the preservation of the subject matter of insurance, whether that advantage inures to him personally or as a representative of the rights or interest of another, has an insurable interest." Vol. 1 May on Insurance, sec. 80; Continental Fire Ins. Co. v. Brooks, 131 Ala. 614, 30 So. 876.

We quoted in Adams' Adm'r v. Reed, 38 S. W. 420, 422, 18 Ky. Law Rep. 858, 35 L. R. A. 692, from Hoyt v. New York Life Ins. Co., 16 N. Y. Super. Ct. (3 Bosw.) 440, this principle:

> "It is not necessary, in life insurance, that the one for whose benefit the life of another is insured should be a creditor of another. It is enough that, in the ordinary course of events, loss or disadvantage will naturally and probably arise, to the party in whose favor the policy is written, from the death of the person whose life is insured."

Continuing, we said:

> "Under this rule the partner may insure his copartner, or the employer the life of his employee;

and in all cases where, from the relation the parties sustain towards each other, whether from near kindred or from a contractual relation, such policies have been upheld.''

It is generally ruled that a firm—a partnership—has an insurable interest in the life of a member of it, or its employee, and a corporation has like interest in its employee or officer, on whose service either depends for its prosperity and whose death will be the cause of a substantial loss to it. Murray Ex'rs, etc., v. G. F. Higgins Co., 300 Pa. 341, 150 A. 629, 75 A. L. R. 1360 and annotation; Warnock v. Davis, 104 U. S. 775, 779, 26 L. Ed. 924; Conn. M. L. Ins. Co. v. Luchs, 108 U. S. 498, 2 S. Ct. 949, 27 L. Ed. 800.

Applying these principles to the facts stated in the exception and the amended petition of the administratrix, it is plain that Dr. Allen had an insurable interest in the life of Sandlin.

The procurement of the policy was a completed transaction prior to the execution and delivery of the $2,000 note. The relation of debtor and creditor between Dr. Allen and Sandlin was nonexistent at the time, and the subsequent creation and existence of the debtor-creditor relation between them did not alter or change their relation existing at the time of the issuance of the policy, nor their rights to the proceeds of the policy.

Section 655, Kentucky Statutes, is applicable and conclusive of the right of Dr. Allen to the proceeds of the policy as against the estate of Sandlin. It substantially provides that where a policy is effected by a person in his name on his own life in favor of some person other than himself, having an insurable interest therein, such beneficiary or his legal representative shall be entitled to its proceeds against the creditors or legal representative of the person effecting the same. The intendment of this statute is to protect the proceeds of policies secured under the circumstances of this case against the creditors and legal representative of the person on whose life insurance was obtained. It protects Dr. Allen in his sole right to the proceeds of the policy against Sandlin's estate, though Sandlin executed and delivered the note in the circumstanses set out in the exception and amended petition. Neither the

policy nor its proceeds ever became a part of the estate of Sandlin, though the face of it exceeds $2,000, the amount of the note.

We concur in the judgment as to the policy of insurance.

The facts in the Elizabeth Oetter Case against Everette Sandlin's administratrix are substantially as follows: Elizabeth Sandlin Oetter was the former wife of Everette H. Sandlin. To them was born one child, Margaret Christine Sandlin, an infant now sixteen years of age.

On July 9, 1927, Elizabeth and Everette Sandlin were divorced "on the ground of cruel and inhuman treatment." Under the divorce decree the custody of Margaret Christine Sandlin was awarded to her mother, with an allowance of $75 per month to be paid by the father for Margaret Christine's maintenance. Later, an order was entered amending and modifying this judgment and requiring him to pay her mother only $40 a month for her maintenance.

The father was killed in an automobile accident on January 20, 1934. He left surviving as his only child, Margaret Christine Sandlin, and a widow, Elwin B. Sandlin, who is now the administratrix of his estate. His estate is insolvent. Margaret Christine Sandlin has no estate of any kind and at this time she is a student at the Louisville Girls' High School. By her next friend, she is here insisting that the death of her father did not relieve his estate of the liability of $40 a month awarded to her mother for her maintenance.

To sustain this insistence, she cites to us Stone v. Bayley, 75 Wash. 184, 134 P. 820, 48 L. R. A. (N. S.) 429; Murphy v. Moyle, 17 Utah, 113, 53 P. 1010, 70 Am. St. Rep. 767; Miller v. Miller, 64 Me. 484; West v. West, 241 Mich. 679, 217 N. W. 924; Mansfield v. Hill, 56 Or. 400, 107 P. 471, 108 P. 1007; Smith v. Funk, 141 Okl. 188, 284 P. 638; Carey v. Carey, 163 Tenn. 486, 43 S. W. (2d) 498, 499; 9 R. C. L. sec. 300, page 484; 19 C. J. page 360, sec. 822; Schouler on Marriage & Divorce (6th Ed.) Vol. 2, sec. 1916.

An examination of these text-books and cases discloses that they are predicated either on a statute, a contract, or a judgment which created a lien on or ded-

icated the estate of the father for the support of the infant after his death. Whatever may be the ruling of the courts of other jurisdictions, the question presented for solution is controlled by section 2123, Kentucky Statutes.

> "The manifest purpose of the statute was to always keep it in the power of the chancellor, upon the application of either parent, to change or modify its orders, * * * as to allowances for maintenance * * * when the changed conditions justify it."

In short, section 2123 is the recognition of the chancellor's right not finally or irrevocably to fix the status of the infant and its maintenance without the power to modify or change any order for the infant's maintenance "which may grow out of the changed conditions arising after the entry of the original order." Middleton v. Middleton, 218 Ky. 398, 291 S. W. 359, 360; Gribben v. Gribben, 227 Ky. 96, 11 S. W. (2d) 998; Miles v. Miles, 203 Ky. 431, 262 S. W. 576; Parks v. Parks, 209 Ky. 127, 272 S. W. 419; Nutty v. Nutty, 213 Ky. 738, 281 S. W. 979; Walden v. Walden, 250 Ky. 379, 63 S. W. (2d) 290. Indeed, there can be no final judgment for or against the infant's allowance for maintenance. See Middleton v. Middleton, supra; Bishop v. Bishop, 238 Ky. 702, 38 S. W. (2d) 657; Boehmer v. Boehmer, 259 Ky. 69, 82 S. W. (2d) 199. The interest of justice requires the exercise of the power of the court to control the father's responsibility to maintain his infant child according to the altered or changed conditions of either, subsequent to a divorce decree. Such power is not lost by the death of the father. Creyts v. Creyts, 143 Mich. 375, 106 N. W. 1111, 114 Am. St. Rep. 656.

Without a divorce, the father is only bound to support his infant children so long as he lives, and it would be illogical to hold that, by reason of a divorce decree, a child is in a better position in respect to his father's estate than he would be without the decree for divorce. Blades' Ex'r, etc., v. Szatai, 151 Md. 644, 135 A. 841, 50 A. L. R. 232; Rice v. Andrews, 127 Misc. 826, 217 N. Y. S. 528, 531; Carey v. Carey, 163 Tenn. 486, 43 S. W. (2d) 498, 499.

This principle is admirably expressed in Rice v. Andrews, thuswise:

"The liability of the decedent for the support of his son is not founded on any contract, express or implied. It is simply a natural and legal duty which is imposed on any father who brings a child into the world. When the court granted this divorce and dissolved the marriage between the parents and gave the custody of the lad to the father, it simply continued by implication that general duty. The obligation under the decree is still a personal one, and does not constitute a debt of the parent. It cannot, therefor, be made operative upon his estate after his death."

"The duty resting upon the father to support and maintain his child during minority does not rest entirely upon the parental relation. The obligation carries with it the correlative right to the services and society of his offspring. This right the father no longer has. He is not here to enjoy association with his son, nor to profit by his earnings. His estate cannot stand in his shoes in this regard."

"No discrimination in favor of minors against adult children is permitted in the division of the estate of their deceased parent, notwithstanding the share of the minors is totally inadequate for their support, and they have no other resource. To hold that the obligation of a father to support his infant child may be adjudged a charge against his estate, after his death, would upset the entire fabric of statutory law regulating the distribution and devolution of estates, which is wholly inconsistent and incompatible with such theory." Carey v. Carey, supra.

The judgment disallowing her maintenance after her father's death is affirmed.