[S. F. No. 15369. In Bank.—February 3, 1936.]

THE PENN MUTUAL LIFE INSURANCE COMPANY (a Corporation), Plaintiff, v. BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a Corporation) et al., Defendants; FRANCIS P. WALSH et al., Respondents; BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a Corporation), Appellant.

Keyes & Erskine, Thornton & Watt and Livingston & Livingston for Appellant.

Milton Newmark, Leon W. Scales, R. O. Purvis and Varnum Paul for Respondents.

SEAWELL, J.—This appeal is from judgments aggregating the sum of $7;261.31, with interest and court costs, rendered in favor of the trustee in bankruptcy of Mullin-Acton Company, a corporation, and Associated Indemnity Corporation, and against a portion of the proceeds of three life insurance policies issued upon the life of Spencer J. Johnson, Jr., held as a trust fund by appellant bank for certain purposes which will hereafter appear. Said judgment of $7,261.31 represents premiums paid by Mullin-Johnson Company on said policies of insurance issued on the life of Johnson. Said trustee in bankruptcy and Associated Indemnity Corporation, as judgment creditors of Mullin-Johnson Company, claim that said payments were made without consideration and said funds should be applied to payment of Mullin-Johnson Company's indebtedness. An attorney's fee in the sum of $750 was awarded to the attorney of appellant bank, trustee, payable out of said trust fund.

The Bank of America National Trust and Savings Association, by merger proceedings, became the successor in interest to the Humboldt Bank in the trust agreement and is prosecuting this appeal. It is taken as a matter of fact that Mullin-Acton Company and the Mullin-Johnson Company are in reality one and the same entity by succession and that Spencer J. Johnson, Jr., and George H. Mullin owned all of the stock of both corporations in equal shares, as well as all of the stock of Frank Howard Allen & Company, which was the original corporation. All three corporations appear to have been incorporated for the same purpose and the names are used interchangeably by court and counsel, notwithstanding they bear separate names and did on certain occasions transact business in their respective names.

The action has to do directly with the right of creditors to apply the premiums paid by the Mullin-Johnson Company on three certain insurance policies of the face value of $10,000 each, issued by the Penn Mutual Life Insurance Company, a corporation, on the life of Spencer J. Johnson, Jr., by the terms of which the Humboldt Bank of San Francisco was named as beneficiary. Spencer J. Johnson, the insured, died February 14, 1932. Before any of said policies were paid, the Penn Mutual Life Insurance Company admitted its liability on said policies of insurance and, being moved to action

by the fact that writs of attachment and garnishments had been served upon it by various claimants of the insurance proceeds, paid into the registry of the court the sum of $27,190.40, said sum being the balance due after deducting from the cash surrender value of said policies the sum of $4,140 borrowed by said Johnson on said policies, and filed a complaint in interpleader. With the consent of all parties to the proceeding, said insurance company was thereupon dismissed from and relieved of all liability or responsibility respecting the disposition of the proceeds of said policies.

In order to throw as much light upon the unusual and anomalous transactions of Mr. Johnson and Mr. Mullin, the principal actors in the matter, as the record affords, it is necessary to turn back to the beginning of their first business association as insurance brokers, conducted in the original corporate name of Frank Howard Allen & Company. According to the pleadings—very little oral testimony was taken at the trial—the name was subsequently changed to Mullin-Acton Company and again changed to Mullin-Johnson Company. No reason is given for the organization of the several corporations, nor does it appear whether or not the existing corporation was dissolved upon the organization of the one which next followed it, or that any one has since become dissolved. It is the position of appellant that the companies are the same entities. Johnson and Mullin at all times owned in equal shares all of the stock of the several entities, except one or two qualifying shares. Nothing is told concerning the date of organization of any one of said corporations or the period of its existence.

On October 18, 1933, judgment was entered against the Mullin-Johnson Company and in favor of Associated Indemnity Corporation, one of the interpleading defendants herein, in the sum of $1622.21; on February 14, 1933, interpleader Raymond A. Burr, as trustee in bankruptcy of Mullin-Acton Company, a corporation, obtained a judgment in the sum of $31,757.01 against the Mullin-Johnson Company. This company filed an answer herein in which it identified itself as the "Mullin-Johnson Company, also known as the Mullin-Acton Company, Brokerage Department, a corporation". Its answer raises no substantial issue. The identity and separate legal obligations of the two corporations are left in an ex-

ceedingly vague state, but the inference is strong that both were insolvent. One was admittedly adjudged a bankrupt some time before 1933.

It appears that Messrs. Johnson and Mullin were associated in the life insurance brokerage business some time prior to the execution of the trust indenture herein, and when operating under the name of Frank Howard Allen & Company, each had procured three life insurance policies on his own life in the sum of $10,000 each, proceeds payable to their respective estates. How long the above policies had existed before the present plan was organized is not shown. However, on June 10, 1924, Mr. Johnson, Mr. Mullin, Humboldt Bank and Frank Howard Allen & Company entered into an agreement, which they call a trust indenture, wherein it was recited that the lives of Johnson and Mullin, respectively, were insured in the Penn Mutual Life Insurance Company in the sum of $30,000 on three separate insurance policies payable respectively to the estates of the insured, and that it was the intention of said Johnson and Mullin to change the beneficiaries from their respective estates to the Humboldt Bank and thereby appoint said bank trustee of the proceeds of said policies. Said Johnson and Mullin did thereupon assign said policies to the bank for the uses and purposes in said trust set forth and agreed that said policies should be so changed as to make the bank the beneficiary with such reference to the trust as the insurance company should require. Said Frank Howard Allen & Company was to pay the premiums on all policies. In the event of the death of said Johnson, the bank was to collect the insurance due on the policy of the deceased insured and to loan or invest the same in such manner as it might see fit, with full power to hold, manage, control and dispose of every part of the trust estate. The trust agreement contains the usual provisions for the payment of taxes, assessments, compensation of the trustee, and other omitted formal matters which have no material bearing on the question as to whether the creditors of the corporation which paid the premiums are entitled to recover the same from the fund which was created by the proceeds of said policies, in the circumstances of the case presented.

It is by said agreement provided that the money collected upon the life policies of said Johnson and Mullin shall be

kept in two separate funds named, respectively, the Johnson fund and the Mullin fund. Johnson and Mullin were married men and the first consideration of each, as testified to by Mullin, was the protection of their respective wives. The fund provisions being identical in all respects, except as to the names of their respective wives and their nominees or heirs, it will be necessary only to consider the Johnson fund. It is provided by paragraph X of said indenture that the net annual income from the proceeds of said policies shall be paid to Mildred P. Johnson, wife of Spencer J. Johnson, Jr., monthly. In addition to said monthly income the trustee may pay her so much of the principal as it may see fit, provided it shall not pay her in the aggregate more than $15,000. Upon the death of Mildred P. Johnson $15,000 in cash or securities of that value—to be taken from the principal of the Johnson fund less the amount of principal paid to the said Mildred P. Johnson during her lifetime—shall be paid to such person or persons as Mildred P. Johnson shall have designated by her written designation filed with the bank during her lifetime and not revoked by written revocation, and if at the time of her death there be no unrevoked designation on file with the bank, then to such person or persons as the said Mildred P. Johnson shall have appointed by her last will and testament, and if there be no such designation or appointment, then to the heirs at law of the said Mildred P. Johnson, "and the balance of the principal of the Johnson Fund, not exceeding in value $15,000, shall be paid, transferred and delivered to said company [Frank Howard Allen & Company] but if at the time of the death of the said Mildred P. Johnson, the said company shall not be in existence as a corporation authorized to do business under the laws of the State of California, then the balance of the principal of the said Johnson Fund that would have been paid, transferred and delivered to the said company if it had been in existence as a corporation authorized to do business under the laws of the State of California, shall be paid, transferred and delivered to such person or persons as the said Mildred P. Johnson shall have designated by her written designation filed with the bank during her lifetime and not revoked . . . and if at the time of her death there be no such unrevoked designation on file with the bank, then to such person or persons as the said Mildred P. Johnson

shall have appointed by her last will and testament, and if there be no such designation or appointment, then to the heirs at law of the said Mildred P. Johnson; and if such balance exceeds $15,000 the excess over $15,000 shall be paid to the persons designated or appointed by the said Mildred P. Johnson as above stated, or to her heirs at law.''

Paragraph XI provides that if the said George H. Mullin should die within three months after the date of the death of the said Spencer J. Johnson, Jr., then the portion of the said Johnson fund which would have been payable to the said Frank Howard Allen & Company on the death of the said Mildred P. Johnson shall be paid to the said Mildred P. Johnson five years after the death of the said George H. Mullin, if she is living, but if she shall have died within the said period of five years, then the portion of the said Johnson fund that would have gone to her if she had lived for five years after the death of Mullin shall be paid and delivered in the same manner as it would have been paid if George H. Mullin had lived three months after the death of said Johnson.

### "XII.

''It is mutually agreed that this trust agreement may be revoked or modified at any time by a written notice of revocation or modification signed by the said Spencer J. Johnson, Jr., and the said George H. Mullin. It is further agreed that after the death of either one of them, it may likewise be revoked or modified by the survivor of them with the written consent of the widow of the one who has died; and if both Spencer J. Johnson, Jr., and George H. Mullin are dead it may be revoked or modified by the written consent of their two widows (or the survivor of them) and the consent of the bank. All such notices of revocation or modification shall be filed with the bank. No modification of the trust shall be valid unless such modification shall be assented to by the bank.

### "XIV.

''All beneficiaries under this trust are hereby forbidden to sell, pledge, assign or otherwise dispose of their right, title, or interest in any part of the principal or interest of the trust property, and no assignment or order by any beneficiary by way of anticipation of any part of the income of the trust herein created shall be valid; but the income shall be paid

by the trustee directly to the beneficiary or deposited to the beneficiary's account in some bank designated by such beneficiary without regard to any assignment or order; nor can the principal or the income of the said trust be attached or garnished while in the hands of the trustee.''

The foregoing extracts sufficiently describe the trust instrument under which the proceeds if collected were to be held, managed and disposed of. It was executed by Mullin, as president of Frank Howard Allen & Company, and by Johnson, Mullin and the Humboldt Bank and approved by Mildred P. Johnson, wife of Spencer J. Johnson, Jr., and by Lorraine Sands Mullin, wife of George H. Mullin.

On November 16, 1926, by an agreement entered into between Spencer J. Johnson, Jr., and George H. Mullin as trustors and the Humboldt Bank as trustee, and the Mullin-Acton Company, Brokerage Department, the original trust instrument was modified to conform to a certain agreement entered into by George H. Mullin and his wife, Lorraine Sands Mullin, whereby it was agreed between them to make the trust agreement dated June 10, 1924, irrevocable in so far as the benefits therefrom might flow to said wife for a period of ten years, provided she should live that long, commencing March 1, 1926, and ending February 29, 1936. Said modification has to do with the power of revocation or modification of the trust as it affected Mullin and wife, and it has no particular relevancy to the main question at issue.

The three policies from which the trust fund is derived are similar in tenor and effect and purport to make the Humboldt Bank the beneficiary, and provide that the right to change the beneficiary is not reserved by the insured, as provided in section 4 thereof. They bear numbers, dates of issuance and written annotations as follows:

No. 1202657 is dated June 29, 1926. It was issued in place of one which bears the same number and which policy was dated April 21, 1926, and thereafter canceled. The policy as issued is to have the same privileges as if issued March 24, 1924.

No. 1315624 was issued April 19, 1928, in place of policy No. 1221330, which policy was in force more than a year.

No. 1107551 was issued July 12, 1926, instead of one bearing the same number and dated March 24, 1924, which policy was

canceled, and the policy issued July 12, 1926, is to have the same privileges as if dated March 24, 1924.

The numbers of said original three policies existing at the time the trust agreement was made, to wit, June 10, 1924, were 1107551, 1107554 and 1107555. The proceeds were payable to the estate of Johnson. In order to make the bank the beneficiary under said policies, instead of his estate, the insured and all parties to the trust agreement assigned said policies to the bank for the uses set forth in said trust agreement and agreed that the policies be so changed as to make the bank the beneficiary. Original policies 1107554 and 1107555 were delivered to the Humboldt Bank and were by it surrendered to Johnson and were no longer subject to the trust agreement. One of said policies so substituted for the surrendered policies is policy No. 1315624; the other is 1202657, and the original policy is No. 1107551. These policies constitute the genesis of the policies involved in this proceeding.

On May 6, 1931, the Bank of America National Trust and Savings Association, successor of the Humboldt Bank—the consent of all parties to the said agreement having been obtained—assigned all of the aforesaid policies of insurance to the insured, Johnson, so that he might borrow thereon. On May 11, 1931, he borrowed from the plaintiff, insurer, the sum of $4,140, no part of which was repaid. On June 1, 1931, said insured reassigned said policies to the bank and caused it to be designated the beneficiary, making each of said policies payable to the bank as trustee in accordance with the provisions of said trust instrument as modified.

Both of the defendants, Associated Indemnity Corporation and the trustee in bankruptcy of Mullin-Acton Company, obtained money judgments in 1932 against Mullin-Johnson Company in the respective sums of $1622.21 and $31,757.01. The total amount paid to the plaintiff insurer on account of premiums on the Johnson policies was $8,317.55. At the time Johnson borrowed said $4,140 from the insurance company he paid on account of premiums then due $1,056.24. This amount deducted from the full amount of premiums, to wit, $8,317.55, leaves $7,261.31, the amount paid by Mullin-Johnson Company as premiums. The court in its judgment limited the amount recoverable by said creditors to the amount

of the premiums paid by Mullin-Johnson Company. Of that sum the Associated Indemnity Corporation, being a prior attaching creditor, was awarded the full amount of its judgment obtained in said action against Mullin-Johnson Company, $1622.21, and the trustee in bankruptcy of Mullin-Acton Company was awarded the remainder of said fund, $5,639.10. The trustee in bankruptcy prayed for the full amount of its judgment of $31,757.01 as against said insurance fund, but the court by its judgment specially limited the sum to be paid to said trustee in bankruptcy to the remainder, to wit, $5,639.10, premium accumulations, and decreed that the balance of the fund so deposited in the registry be delivered to the Bank of America National Trust and Savings Association, as trustee, and that said bank pay a fee to attorney Morse Erskine in the sum of $750. No appeal was taken by the trustee in bankruptcy from this judgment or any part thereof.

As to whether the judgment in this case would render the trust fund immune from attack on any or all possible grounds is not a matter properly before us for decision. The bank as trustee is appealing from that portion of the judgment which decreed that the portion of the fund derived only from premiums paid by Mullin-Johnson Company are subject to execution on the creditors' claim. The balance of said fund, consisting of $19,929.19, is to be held intact by the bank as trustee under the agreement of June 10, 1924.

■ Appellant claims that Mullin-Johnson Company, corporation, having agreed to pay the premiums on the life of Johnson, an officer of said corporation, brings the case within the rule announced in *Murray, Ex'x,* v. *G. F. Higgins Co.,* 300 Pa. 341 [150 Atl. 629, 75 A. L. R. 1360], and the annotations which follow. The cases therein relied on hold that it is the general rule that a corporation has an insurable interest in the life of an officer on whose services the corporation depends for its prosperity and whose death will be the cause of a substantial loss. In all of the cases reviewed therein it appears that the insured president or head executive officer was a person who possessed special technical knowledge or exceptional ability, energy and initiative, and in order to make secure its financial position the company had an insurable interest in the life of its president. In those cases the pro-

ceeds of the policies went to the immediate use of the company which paid the premiums and the possession of said proceeds was not dependent upon remote possibilities or subject to be entirely defeated by the acts or will of parties who would profit by such defeasance. Neither was Mr. Johnson, who was secretary of one of the corporations and vice-president of another, shown to have possessed unusual ability, energy or initiative. In the instant case the trust agreement could have been revoked by the joint consent of Mullin and Johnson or with the consent of the survivor of either and the wife of the deceased member of the corporation. As a condition precedent to the enjoyment of any part of the fund which the Mullin-Johnson Company had created, said corporation was required to continue to exist as a corporation authorized to do business under the laws of the state to the close of the life of Mildred P. Johnson. The many contingencies which were likely to arise to defeat even the remote chance of the corporation ever enjoying any part of the proceeds of said policies, as appear in the body of the trust agreement, render the likelihood that the corporation which paid the premiums will ever benefit thereby in any substantial manner so small as to justify the conclusion that a *bona fide* consideration did not exist for the payment of the premiums. Confusion exists as to the purpose, objects and aims of the several entities. We find the trustee in bankruptcy of the Mullin-Acton Company obtaining a judgment against the Mullin-Johnson Company, and yet it is claimed that they constitute but one corporation, of which Johnson and Mullin own all of the stock. The original policies, under the *régime* of Frank Howard Allen & Company, made the estates of Johnson and Mullin their beneficiaries. These policies, by assignments and by the process of interchange, were converted so as to finally make the Humboldt Bank the beneficiary. The unusual trust agreement was thereupon executed. That the change was made to protect the wives and families of Johnson and Mullin is made clear by the positive testimony of Mullin. It is further confirmed by the nature of the instrument itself. It contains provisions forbidding assignments by any of the beneficiaries of any interest therein created and attempts to make both the principal and income of the trust *corpus* immune from attachment or garnishment while it remains in the hands of the trustee. The record discloses nothing from which it may

be implied that any of said corporations were ever prosperous. In fact, it appears that for some years back they were in a weakened financial condition. In 1931 Johnson borrowed on his policy the sum of $4,140 and paid on account of premiums then due and which were the obligation of Mullin-Johnson Company the sum of $1,056.24. In 1932 Mullin-Acton Company was a bankrupt. In the same year Mullin-Johnson Company had a judgment docketed against it by the creditors of Mullin-Acton Company in the sum of $31,757.01. The premiums which were paid on account of the Johnson policies aggregated approximately $1500 per annum and presumably those paid on account of Mullin's policies, the same amount, totaling $3,000 per year. An indebtedness of more than $33,000 existed against Mullin-Johnson Company approximately one year after Johnson had paid out of the moneys he had borrowed from the insurance company the premiums that Mullin-Johnson Company had failed to pay.

It is true that it is the policy of the law to protect, where equitable to do so, the widow and dependents of the insured. It is also true that a corporation may not be used by its officers or stockholders as a means of diverting its profits or proceeds to the payment of premiums on insurance policies to the enrichment of its beneficiaries at the expense of or to the detriment of its creditors. This is a question to be determined upon the facts of each case presented.

Mullin-Johnson Company was not bound to pay the premiums for the reason that it was not the owner of the policy and there was no sufficient consideration, as we view the trust agreement and the evidence, warranting it in making such payments, but if it paid voluntarily, having some claim or color of interest in the policy, it thereby acquired an equitable lien on the proceeds of the policy as security for the repayment of its advances. (3 Pomeroy, Equity Jurisprudence, sec. 1243.) The most that can be said is that said corporation had but a color of interest in the proceeds of said policies. This being so it was entitled to repayment of its advances. The corporation declined to assert its claim inasmuch as Johnson and Mullin owned all the stock. Neither it nor the beneficiaries would proceed against the trust fund created for the uses set forth in the trust agreement. This being so, the creditors of said corporation had a right to subrogate themselves in its stead.

■ The various corporations were admittedly "two man" corporations and each one was the *alter ego* of the owners of said corporations. The rule is that where parties place themselves in dual positions they will not be heard to complain if they are not permitted to choose a course most favorable to themselves and which would prejudice the rights of third parties if by pursuing another course a more equitable solution of the problem would be attained.

■ Appellant strenuously contends that the premiums paid by the corporation were on account of wages or salaries due and allowed Johnson and Mullin by the corporation and thus furnish a consideration for the payment of said premiums; that as directors of the corporation, Mullin-Johnson Company, they allowed themselves wages or salary equalling the accrued premiums. This contention has support only in the testimony of Mullin. His testimony on this issue is not convincing and the trial court evidently did not credit it. That it was entirely within the power of the trial court to weigh the evidence and judge of the credibility of the witness is not questioned. It is claimed, however, that the court arbitrarily rejected this testimony. We have examined and considered the testimony with respect to the rules of probability, interest of the witness, its reasonableness in the circumstances of the case and find no reason for holding that the trial court committed error in refusing to accept the statement of the witness as to payment of salary to Johnson and Mullin by the corporation. The claim is out of harmony with the plan or scheme of the organization and has no support in any other part of the record.

■ No question of fraudulent intent on the part of Mullin and Johnson in formulating the trust plan or in procuring said insurance policies is raised by the pleadings. Whether fraud or *contra bonos mores* are pleaded or not does not deny the court the right of scrutinizing the *bona fides* of the transaction in an effort to arrive at a fair and equitable conclusion. Upon a full examination of the case we are satisfied that the trial court arrived at such a conclusion.

Judgment affirmed.

Curtis, J., Waste, C. J., Thompson, J., and Shenk, J., concurred.

Rehearing denied.