## Gibbons' Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ., and Marx, P. J., twenty-third judicial district.

*Alfred N. Keim* and *William I. Stanton*, for exceptant.

*Robert T. McCracken*, contra.

KLEIN, J., July 23, 1937.—Michael Gibbons died in 1896, survived by a widow, four children, Cecelia C. Callaghan, John J. Gibbons, Charles J. Gibbons, and Catharine A. Connor, and by the children of a deceased daughter. Controversies arising from the construction of his will and two codicils have been before our Supreme Court on three different occasions. By the terms of the will and codicils the income from the residuary estate was left in trust for the widow for life. At her death the income went

to testator's children and the issue of any deceased child or children, share and share alike, per stirpes. Testator further provided that, upon the death of a child without leaving lawful issue, his or her share of the income was to be divided among the surviving children and the issue of deceased children.

The Supreme Court, in Gibbons v. Connor, 220 Pa. 395 (1908), and again in Gibbons v. Gibbons, 235 Pa. 24 (1912), held that the trust created by the will must be upheld as long as any of testator's children survives. These decisions left undecided, however, the question of the disposition of the corpus of the estate upon the termination of the trust.

Testator's widow died in 1903. His daughter, Cecelia C. Callaghan, died April 5, 1905, without leaving issue. The son, John J. Gibbons, died October 7, 1906, leaving four children to survive him.

In 1911, at which time only two of testator's children, to wit, Charles J. Gibbons and Catharine A. Connor, were alive, the former became involved in financial difficulties and judgments in the sum of $54,651 were entered against him. On January 18, 1911, the said Charles J. Gibbons and his wife executed a deed of trust whereby they assigned all their interest in this estate to the Real Estate Title Insurance & Trust Company, now Land Title Bank & Trust Company, as trustee, in consideration of a cash payment of $7,000 and the further payment of $23,593 for the purchase of the aforesaid judgments, subject to an agreement to restrict them of record to his interest in this estate. Insurance policies on the life of Charles J. Gibbons aggregating $30,000 were also assigned to the trustee.

Charles J. Gibbons died on October 9, 1916, without leaving issue. The payments of income to which he had been entitled thereupon ceased and the entire income became distributable in one-third shares to his surviving sister and to the children of his deceased brother and sister. His assignee thereupon collected $29,691.13 upon

the insurance policies. Seventeen years elapsed during which time Charles' assignee received no income from the estate.

On November 30, 1933, the last surviving sister died. and the trust terminated. This court, in an opinion in which they were equally divided, then decided that the corpus vested in the grandchildren. On appeal to the Supreme Court, this court was reversed, and it was finally settled that an intestacy existed, with the result that a share of the corpus vested in Charles J. Gibbons.

The trustee under the deed of trust made claim to his share of the estate by reason of the assignment of January 18, 1911. The assignment was attacked by the administratrix of the estate of Charles J. Gibbons on the ground that the assignee did not have an insurable interest in his life at the time of the assignment of the life insurance policies, and that consequently the transaction was a wagering contract and illegal. She contends, further, that the assignments of the interest in the estate, being part of an indivisible transaction, are tainted with illegality and are therefore unenforceable.

On March 26, 1936, Judge Marx filed an adjudication in which he concluded that an insurable interest did exist and sustained the assignment. Exceptions were taken to this adjudication. Subsequently the matter was recommitted to him for the purpose of taking additional testimony. A readjudication was filed by Judge Marx on April 6, 1937, in which he reached a directly opposite conclusion.

In the readjudication he held that no insurable interest existed at the time of the assignment of the policies and that the contract as to the insurance was a wagering contract and void. He therefore ordered the sum of $24,-646.63, the difference between the proceeds of the policies and the premiums actually paid, with interest, to be deducted from the share awarded to Charles J. Gibbons' assignee and withheld for the benefit of his personal rep-

resentatives. The exceptions to this second or readjudication are now before us.

After a most careful study of the entire record, we are reluctantly forced to the conclusion that the learned auditing judge was correct in his first adjudication. We fail to see how the additional testimony offered can in any way alter his former decision.

The entire problem centers upon whether the assignee had an insurable interest in Charles J. Gibbons' life when the policies were assigned to it. If we decide that this insurable interest was present, all of the objections to the validity of the assignments of the interest in the estate must fall.

The subject of insurable interest is fully discussed in United Security Life Ins., etc., v. Brown (No. 2), 270 Pa. 270, 271 (1921), in which Mr. Justice Sadler said: · " 'An insurable interest is not necessarily a definite pecuniary interest, such as is recognized and protected at law; it may be contingent, restricted as to time, or indeterminate in amount, but it must be actual, such as will reasonably justify a well-grounded expectation of advantage dependent upon the life insured, so that the purpose of the party effecting the insurance may be to secure that advantage, and not merely to put a wager upon human life': Corson's App. 113 Pa. 438. See, also, 25 Cyc. 703; 1 Cooley, Briefs on Insurance, 282; 2 Joyce on Insurance, sections 887, 894 A. 'In all cases there must be a reasonable ground, founded upon the relationship of the parties to each other, either pecuniary, or of blood, or affinity, to expect some benefit or advantage from the continuance of the life of the assured': Warnock v. Davis, 104 U. S. 779."

The legislature has given us the following excellent definition in section 412 of The Insurance Company Law of May 17, 1921, P. L. 682:

"The term 'insurable interest' is defined as meaning, in the case of persons related by blood or law, an interest engendered by love and affection, and, in the case of other

persons, a lawful economic interest in having the life of the insured continue, as distinguished from an interest which would arise only by the death of the insured."

The Supreme Court has on several occasions indicated that this definition merely reënacts what has, in effect, been declared by the Pennsylvania cases, prior to the passage of The Insurance Company Law, to constitute an insurable interest: See Murray, Executrix, v. G. F. Higgins Co., 300 Pa. 341, 346 (1930); United Security Life Insurance & Trust Co. v. Perugini Union Mutual Relief Assn. (No. 1), 273 Pa. 554, 557 (1922); United Security Life Ins., etc., v. Brown (No. 2), supra.

Did the assignee of Charles J. Gibbons' interest in this estate have a lawful economic interest in having his life continue? Was their relationship such as to give the assignee a real interest in conserving the insured's life? Was there any reasonable expectation of pecuniary benefit or advantage to the assignee from the continuance of the assignor's existence? We are of opinion that all of these questions must be answered affirmatively. We believe that under the circumstances of this case, in the ordinary course of events, financial loss or disadvantage to the assignee would have naturally and probably resulted from the death of Charles J. Gibbons, the insured. We therefore conclude that the assignee had an insurable interest in the life of the insured at the time of the assignment of the life insurance policies.

It must be borne in mind that when the life insurance policies were assigned in 1911, a real doubt existed as to the nature of the insured's remainder interest. This is conclusively shown by the fact that this court was of opinion that the corpus vested in testator's grandchildren at the termination of the trust, and that Charles J. Gibbons' interest in the remainder was not definitely determined until the third decision of the Supreme Court in 1935. The only certain asset purchased by the assignee was the insured's life interest. Under the Supreme Court's construction of the will, the trust did not terminate until

the death of both Charles J. Gibbons and his sister, Catharine A. Connor. If Charles died first, his assignee would thereafter be deprived of all income from the estate and would then be compelled to await the sister's death to determine who was entitled to the remainder.

It seems clear that an assignee of a tenant for life has an insurable interest in the tenant: Harvey's Estate, 15 Dist. R. 298 (1906). See also opinion of Holland, P. J., of the Orphans' Court of Montgomery County, in Gill's Estate, 50 Montg. 96, affirmed by the Supreme Court, on other grounds, in 314 Pa. 558 (1934). The fact that the purchase also included a disputed claim to the remainder does not, in our judgment, destroy the insurable interest of the assignee in the life of the insured.

The learned auditing judge, in his second adjudication, held that the instant case was directly controlled by Taussig v. United Security Life Insurance & Trust Co., 231 Pa. 16 (1911). In our opinion this is erroneous. We believe the cases to be readily distinguishable. In the Taussig case, the insured assigned a vested interest in remainder in his deceased father's estate, subject to the life estate of his mother. The Supreme Court held that the assignee had no insurable interest. This conclusion was obvious because the assignee had no interest in the continuance of the life of the remainderman. Whether he lived or died made absolutely no difference to the assignee, since the remainder interest could not be collected until the termination of the life of the insured's mother, the life tenant. But, as we have pointed out, in the present case, the assignee had a real interest in the continuance of the life of Charles J. Gibbons, because his death prior to that of his sister would entail a serious financial loss.

The exceptions are therefore sustained and the interest of Charles J. Gibbons in this estate is awarded to his assignee, the Real Estate-Land Title & Trust Company, now Land Title Bank & Trust Company, trustee.

MARX, P. J., dissents.