## Arnold v. Arnold's Ex'x.

February 27, 1951.

J. C. Dedman, Judge.

Swinford & Sims for appellant.

John P. Lair for appellee.

JUDGE MOREMEN—Reversing.

On July 7, 1937, Clarence Arnold filed a suit for divorce from his wife, Mary Arnold. On July 16, 1937, she filed an answer and cross-petition seeking a divorce

from bed and board. On November 11, 1937, a child was born to this union, and he was named Harry Kent Arnold. Thereafter, Mary Arnold filed an amended answer and counterclaim and prayed an absolute divorce, alimony, custody of the child and maintenance for it. On March 26, 1938, a judgment was entered awarding Mary Arnold an absolute divorce, custody of the child, and the sum of $20 per month as maintenance. The judgment also contained this provision: "It is ordered and adjudged by the Court that each party hereto shall restore to the other such property not disposed of at the commencement of this action as either may have obtained directly or indirectly from or through the other during marriage, or in consideration or by reason thereof, except that any property that the defendant, Mary Arnold, disposed of prior to the entering of this judgment or the proceeds thereof which might have belonged to the defendant, Clarence Arnold, shall be awarded to the said Mary Arnold as alimony and no restitution therefor need be made."

Clarence Arnold paid the maintenance award until he died, testate, in the month of June 1948. Under the terms of his will, he bequeathed the sum of $1000 to his son; $500 to the Cynthiana Methodist Church, and the residue of his estate was devised and bequeathed in equal shares to his father, John Arnold, and sisters and brother, with directions for the disposition of their shares in the event of death. His sister Gladys Kitchen was named executrix. The alleged value of the estate is $30,000.

On February 24, 1949, Harry Kent Arnold, by his next friend, filed a petition in the Harrison Circuit Court, in which he prayed that the estate of Clarence Arnold be finally settled; and after the payment of decedent's just debts, the remainder of testator's estate be delivered to plaintiff's guardian. This suit was apparently based upon the theory that a father's estate was liable for maintenance payment through the entire period of his son's infancy. The court under the authority of the rule announced in the case of Sandlin's Adm'x v. Allen, 262 Ky. 355, 90 S. W. 2d 350, 353 where this court said: "Without a divorce, the father is only bound to support his infant children so long as he lives, and it would be illogical to hold that, by reason of a divorce

decree, a child is in a better position in respect to his father's estate than he would be without the decree for divorce," sustained a demurrer to the petition.

Thereafter by two amended petitions, it was averred that after Harry Kent Arnold was born and while the divorce suit was pending his father and mother, for appellant's use and benefit, entered into a contract by the terms of which decedent agreed to:

(a) Pay to appellant's mother for his benefit, a sum not less than $20 per month and more, if his financial circumstances permitted, and,

(b) If he, decedent, died before appellant reached his majority, then he would leave to him his entire estate.

In consideration for which it was alleged that the mother agreed to:

(1) Settle the suit then pending between them.

(2) Accept for appellant, the allowance of $20 referred to in the judgment of divorce.

(3) Withdraw her claim for alimony and proceed on her cross-petition seeking a divorce and in effect giving to decedent a divorce.

It was also alleged the contract was for "other good and valuable considerations not herein recited."

The trial court was of opinion that the three considerations set out seriatim above were insufficient to support the contract and sustained a demurrer to the petition as amended, which was dismissed.

The trial court based his action on the grounds: that the amount of maintenance to be awarded is one for the court alone, and may be raised or lowered at any time, therefore, the mother parted with nothing of value when she agreed to the sum of $20 per month; that the consideration for the promise to withdraw her claim for alimony failed because she was, in fact, awarded alimony. by the judgment of divorce, and that the alleged consideration that she would proceed on her cross-petition for a divorce was a part of a contract intended to facilitate the procurement of a divorce and, therefore, void.

We have copied above that portion of the divorce

decree which contains the restoration provision requir-
ed by the statute to be in such judgments. We cannot
agree that this clause constitutes an award of alimony.
The word alimony is used, but the effect of this provi-
sion is only to leave the parties as they were insofar as
restoration of property by the wife was concerned. It
is true that our statute, KRS 403.060, requires restora-
tion of property not disposed of at the commencement
of the action and this provision has the effect of ex-
tending the time to the day of judgment, but we are
of opinion that this change in the cut off day may not
properly be regarded as an alimony award. We have
only the judgment before us, but there is no intimation
in the record that the mother obtained any additional
property directly or indirectly by reason of the marri-
age or in consideration thereof, between the time suit
for divorce was filed and judgment was entered.

The trial court based his decision that the agree-
ment to proceed on the cross-petition for divorce was
void, on the opinion in the case of Bishop v. Bishop, 238
Ky. 702, 38 S.W.2d 657, 659. In that case the husband
instituted an action against his wife in which he charged
her with infidelity. The wife filed answer and counter-
claim, and asked for alimony and custody of the chil-
dren. Thereafter the parties entered into a contract
which provided that the petition and the cross-petition
be dismissed and that the wife should later institute an
action for divorce on grounds of abandonment and prose-
cute same to final judgment, and that, upon her failure
to do so, it is provided the husband might file action for
divorce on the same ground and prosecute it to final judg-
ment. Although the challenge to the legality of this agree-
ment had been withdrawn from the pleadings in the case,
the court commented that the agreement upon its face
appeared to be a collusive agreement that one party will
sue for divorce with at least a tacit understanding that
the other party will not resist the suit, but, on the con-
tary, will promote the efforts of the one asking relief
at the hands of the court, and quoted from 9 R.C.L.
254, a discussion wherein the rule was summarized as
follows: "A contract between a man and wife as to the
support of their child, however, is not void as against
public policy because it is entered into pending divorce
proceedings between them, where neither its purpose
nor effect in any way facilitates the granting of the di-

vorce. Though there is authority to the contrary, the better view seems to be that the public interest demands disclosure of the true cause of divorce, so that where a spouse has a good ground, his or her agreement to conceal it and allege another is against public policy."

That rule may have been applicable to the facts in the Bishop case, but it has no proper application here. There is no indication that the true cause of divorce was not disclosed, nor that either spouse concealed any fact concerning the real reason for divorce. Nor do we believe that the author of the text above quoted intended the expression, "in any way facilitates the granting of the divorce," to mean any agreeable act by the parties however harmless was sufficient to vitiate the entire proceedings. There must be some element of fraud or bad conduct present. We do not find that in this case, from the facts alleged in the petition, as amended.

The petition also alleges that there were "other good and valuable considerations" for the contract. Although this allegation is not specific, the relationship of father and son is plainly stated and we have held in the case of Doty v. Dickey, 96 S.W. 544, 29 Ky. Law Rep. 900, that love and affection is a sufficient consideration to uphold either an executed or an executory contract between parent and child.

We are of opinion that the petition, as amended, contained sufficient allegations concerning consideration.

Although this case was decided by the trial court upon the pleading, the parties, by agreement, submitted the question of competency of testimony of the mother in the event she was presented as a witness upon the trial of the case upon its merits. This was done by means of presenting to the court an avowal concerning the facts which she would testify to if she were presented in court for that purpose. The court was of opinion "that the mother of the plaintiff, Mary Arnold, has a direct, pecuniary interest in the outcome of this litigation, adverse to the estate of Clarence Arnold, her former husband now deceased, and for that reason is incompetent to testify under Sec. 606 of the Civil Code of Practice of Kentucky, as to a transaction she had with a dead man." It is argued by appellee that, since

upon the death of the father, the duty of supporting a minor child ordinarily falls upon the mother that, if the infant were permitted to prevail in this case and obtain an estate of his own, the personal liability of the mother would be transferred to the estate received from the decedent and therefore the mother would be relieved of her responsibility and, because of this fact, she had a direct, pecuniary interest in the recovery.

In the case of Stowers v. Hollis, 83 Ky. 544, 7 Ky. Law Rep. 549, we held that the mother of a bastard is a competent witness for the child to prove a contract between the father and her for the support of the child, although he was dead when she testified. And in the case of Doty's Adm'r v. Doty's Guardian, 118 Ky. 204, 80 S.W. 803, 26 Ky. Law Rep. 63, 2 L.R.A., N.S., 713, we held, in a case involving similar facts, that the mother was a competent witness even though she had an additional interest in that she was a guardian of the infant and a party to the suit. And in this case it was pointed out that recovery would be the infant's and not the mother's. Although in this case it is conceivable that the mother too would be benefited in a remote sense by the fact that the child would have some estate, we see no reason why the legitimacy of the child should deny to the mother the right to testify when she could have testified had the child been illegitimate, and we are of opinion that the remote benefit which she might receive in this case, in the event the child establishes a contract, is not such a direct, pecuniary interest in the action as would disqualify her as a witness. Furthermore, we have held that ordinarily the parent must provide support for the infant child, without regard to the child's estate, if the parent is able to do so, Hamilton Adm'r v. Riney, 140 Ky. 476, 131 S.W. 287, so it is entirely possible that the mother will not be relieved of her duty to support the child even though he comes into some estate.

We are of opinion that the petition, as amended, alleges a cause of action based on contract, and the judgment is therefore reversed and the case remanded for proceedings consistent with this opinion.