Mary Sue BUDIG, Appellant,

v.

George J. BUDIG, Appellee.

George J. BUDIG, Cross-Appellant,

v.

Mary Sue BUDIG, Cross-Appellee.

Court of Appeals of Kentucky.

May 12, 1972.

James C. Ware, Ware, Bryson, Nolan & West, Covington, for appellant and cross-appellee.

Arnold Taylor, O'Hara, Ruberg & Cetrulo, Covington, for appellee and cross-appellant.

STEINFELD, Chief Justice.

This is an appeal and cross-appeal from a judgment dated November 10, 1969, granting a divorce to the husband, denying one to the wife, and adjudicating questions pertaining to property, alimony and support for children. There was no motion to advance and under the provisions of RCA 1.185 in effect at the time, such cases were not advanced in the absence of such a motion. Several of the errors charged involve issues controlled by Colley v. Colley, Ky., 460 S.W.2d 821 (1970), decided after the appealed judgment was entered. We find that generally the rationale of Colley

prevailed, but we must reverse the cross-appeal on other unrelated grounds. We affirm on the appeal.

After ten years of marriage George T. Budig filed a complaint for divorce against his wife, Mary Sue, and for an adjudication of their property rights. She answered denying fault, counterclaimed for the same relief, sought alimony and demanded custody of their three minor children, with an allowance for their maintenance and support.

The chancellor ordered certain property restored to each of the parties, after which he determined that George had a net estate of $36,844.25 and Mary Sue had $15,833. Mary Sue was awarded lump-sum alimony in the amount of $18,872.25 and custody of the children. George was ordered to pay $90 per week for child support and to maintain in effect specific benefits for the children's welfare. George was charged with the costs of the action, including Mary Sue's attorney's fee of $300.

Mary Sue argues that she should have been restored the title to a $2,500 lot which was conveyed by her father to the couple as a gift. We construe, and George concedes, that the judgment included the restoration of the lot to Mary Sue. In its findings of fact the court credited Mary Sue with having furnished $13,333 toward the accumulation of equity in the parties' residence. This together with the $2,500 lot made up the total of $15,833.

■ George contends that the court abused its discretion by restoring to Mary Sue the proceeds from the settlement of a personal injury suit. He argues that these funds provided the down payment for the purchase of the parties' residence and that they have lost their identity. He says that they have taken on the characteristics of properties described in Cooke v. Cooke, Ky., 449 S.W.2d 216 (1969), that have been acquired by the joint efforts of a husband and wife and are incapable of restoration. The proceeds of a personal injury settlement represent damages of a compensatory nature and are intended to give to the injured person some pecuniary indemnity or restitution for what he has personally suffered or is likely to suffer. See Restatement of Torts, § 903, Compensatory Damages—Definition. Thus, funds received as compensation for a personal injury are the property of the spouse who received them and, just as in the case of an inheritance or gift, should be restored to the original recipient if identification is reasonably possible. These funds were adequately traced, therefore the chancellor correctly awarded Mary Sue the amount represented by her personal injury settlement.

■ George contends in his cross-appeal that "the Chancellor abused his discretion and committed error by including within George's estate, for the calculating of an alimony award to Mary Sue, the value of twenty-five shares of Budig Trucking Company, which shares of stock were a gift to George from his father." He acknowledges that in Hall v. Hall, Ky., 380 S.W.2d 231 (1964), almost the entirety of the husband's net estate was traceable to gifts from his own family and notes that we held that this entire estate should have been considered in determining the alimony allowance. He also refers to such decisions as Heustis v. Heustis, Ky., 346 S.W.2d 778 (1961); Ollish v. Ollish, Ky., 382 S.W.2d 876 (1964); and Legel v. Legel, Ky., 382 S.W.2d 870 (1964). He construes Legel as holding that in making allowance of alimony only the estate accumulated from the income of the husband during marriage should be considered. In Colley v. Colley, supra, we pointed out that there had been confusion in mixing alimony, restoration of property and division of property, and we attempted to clarify the principles to be applied. Among other things, we said that in determining the amount of alimony to be awarded "the amount of the husband's estate and his ability to pay * * * are material aspects." That expression encompassed all of the husband's estate irrespective of the source. See

McCauley v. McCauley, Ky., 467 S.W.2d 359 (1971); and Bradley v. Bradley, Ky., 473 S.W.2d 117 (1971). Colley effectively, if not specifically, overruled cases holding to the contrary. The chancellor did not err in including in his computation the value of the trucking company stock which was given to the husband.

In her appeal Mary Sue contends that the chancellor erred in failing to award periodic alimony, and in his cross-appeal George argues that the award of lump-sum alimony was excessive. These are matters clearly within the sound discretion of the trial court and we may not interfere unless there was an abuse of that discretion. The chancellor found that George had an earning capacity of $300 per week and Mary Sue of $70 per week. We find no abuse of discretion and nothing that warrants our disturbing the chancellor's decision. Scott v. Scott, Ky., 433 S.W.2d 631 (1968); Jackson v. Jackson, Ky., 453 S.W.2d 744 (1970).

In addition to requiring George to pay $90 per week for his children's support, the judgment also ordered him to "maintain in full force and effect, with the children as beneficiaries, life insurance in the sum of $60,000.00 * * *." Until now, it appears, we have never been directly confronted with having to decide whether the chancellor, in child custody and support proceedings pursuant to a divorce, has the authority to order a father to maintain life insurance for the benefit of his children. In Stephanski v. Stephanski, Ky., 473 S.W.2d 806 (1971), it was contended that the court erred in not requiring Mr. Stephanski to retain Mrs. Stephanski and their children as co-beneficiaries of his life insurance policies, but we held that it was not an abuse of discretion to refuse to impose such an obligation and cited cases from other jurisdictions that illustrate the unsettled nature of the issue. In Bradley v. Bradley, Ky., 473 S.W.2d 117 (1971), the issue was whether a husband was correctly required by the divorce decree to pay for

hospital and medical insurance for his wife and children following the decree. There we concluded that "The insurance for the benefit of the children is in keeping with the proposition that a father is responsible for the financial support of his children." However, we said that to require the maintenance of such benefits in favor of a former spouse would amount to additional alimony and disallowed it. Bradley did not involve an obligation for support after death of the parent.

We have found that in those states where a father was ordered to maintain insurance benefits for his children the court's action was usually based upon statutes which the court interpreted as requiring a father to provide for his children's support during their minority regardless of whether he remained alive. See Franklin Life Insurance Company v. Kitchens, 249 Cal.App.2d 632, 57 Cal.Rptr. 652 (1962); and Grotsky v. Grotsky, 58 N.J. 354, 277 A.2d 535 (1971). In those states where a father's duty to support his children abates upon his death it has been held that a requirement that he make provisions for their maintenance afterward is unauthorized in the absence of special circumstances. See generally 18 ALR 2d 1127, Anno: Death of Parent as Affecting Decree for Support of Child, 24 Am.Jur.2d, Divorce and Separation, § 837, p. 949, § 856, p. 971; 27B C.J.S. Divorce, § 319(5), p. 619, § 323(f), p. 729. We have held in Sandlin's Adm'x v. Allen, 262 Ky. 355, 90 S.W.2d 350 (1936), and in Bowling v. Robinson, Ky., 332 S.W.2d 285 (1960), that a parent is not liable for the support of a child after death unless he had obligated himself for such support as in Arnold v. Arnold's Ex'x, 314 Ky. 734, 237 S.W.2d 58 (1951). We reaffirm those decisions and hold that the chancellor erred in ordering George to maintain life insurance for the benefit of his children.

Mary Sue argues that the fee awarded for her counsel's services was inadequate. We cannot consider this matter

because Mary Sue's attorney was not made a party to this appeal. Johnson v. Johnson, Ky., 438 S.W.2d 493 (1969); Horn v. Horn, Ky., 430 S.W.2d 342 (1968).

George asks us to determine whether interest runs on the judgment and if a penalty has been incurred because it was not superseded. These matters have not been presented to the trial court, therefore, we consider it improper for us to discuss them.

The judgment is affirmed on the appeal, and is affirmed in part and reversed in part on the cross-appeal for modification of the judgment to make it consistent with this opinion.

All concur.