SAMUEL H. MILLS ᴇᴛ ᴀʟ. *vs.* THE TRUSTEES OF
ZION CHAPEL IN CAMBRIDGE, Aɴ Eᴄᴄʟᴇ-
ꜱɪᴀꜱᴛɪᴄᴀʟ Cᴏʀᴘᴏʀᴀᴛɪᴏɴ Cʀᴇᴀᴛᴇᴅ Uɴᴅᴇʀ
ᴛʜᴇ Lᴀᴡꜱ ᴏꜰ ᴛʜᴇ Sᴛᴀᴛᴇ ᴏꜰ
Mᴀʀʏʟᴀɴᴅ.

*Religious societies*: *deeds to——; sanction of Legislature; void
conveyances; adverse possession. Recording of instru-
ments; neglect of clerk. Incorporation of reli-
gious societies*: *curative acts. Specific per-
formance*: *interest; decree for resale
of property.*

A deed of land to trustees in trust for a place of worship is
void, unless sanctioned by the Legislature. p. 513

By open, notorious and undisputed possession of the land for
over sixty years, such title may, however, become valid, and
the successors of the trustees acquire title against all persons
except those under legal disabilities. p. 514

The Clerk of a Circut Court had failed to provide and keep
the record book for recording certificates of religious socie-
ties desiring to incorporate under the provisions of Chapter
III of the Acts of 1802; the trustees of a religious corpora-
tion of that county filed a bill for the specific performance
of a contract for the sale of land, occupied by it for over
sixty years, against the vendees, who refused to accept the
property on the ground that the vendor had never recorded
any certificate of incorporation, as required by law, and that
it was not a corporation and could not convey title; on appeal

from an order directing the purchase money to be brought into Court, it was *held*, that it would be inequitable to hold that the plaintiff had never had any legal corporate existence merely because of the failure of the Clerk of Court to perform his duty.. p. 515

In order to perfect the incorporation of the religious society, Chapter 756 of the Acts of 1910 provided for the recording of the original certificate, which should have been recorded under the requirements of the Act of 1802, but which certificate had been set out in full and in due order among the ancient records of the society, and there certified to by the Justice of the Peace of that time and for that county. *Held,* that for the purpose of the Act of 1910, such certificate should be considered as the original. p. 515

Where a vendee refuses to complete his contract of purchase, because of objections to the title, and equitable proceedings are instituted to determine the matter, the vendee should be charged, in general, with interest only from the date of the final decree. p. 515

On a bill filed for the specific performance of a contract for the sale of real estate and praying for no other relief, it is error for the Court to order the property to be resold unless the purchase money be brought into Court within a time named. p. 516

*Decided January 17th, 1913.*

Appeal from the Circuit Court for Dorchester County, in Equity (JONES, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*W. Laird Henry* submitted a brief for the appellant.

*Frederick H. Fletcher* (with a brief by *Goldsborough and Fletcher*) argued the cause for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

On July 17th, 1845, John, James and Elizabeth Muir conveyed to Samuel Corkran and six others as trustees, and their successors in office, forever, a lot of ground in Cambridge, Dorchester county. The terms of the trust as set forth in the deed were

"in trust, that they shall erect and build or cause to be erected and built thereon a house or place of worship, for the use of the members of the Methodist Episcopal Church in the United States of America, according to the rules and discipline in which from time to time may be agreed upon and adopted, by the ministers and preachers of the said church at their general conference in the United States of America, and in further trust and confidence that they shall at all times hereinafter permit such ministers and preachers, belonging to said church, as shall from time to time be duly authorized by the General Conference of the ministers and preachers of the said Methodist Episcopal Church or by the annual conferences authorized by the said General Conference to preach and expound God's holy word therein. Provided that in case the General Conference of said Methodist Episcopal Church shall at any time hereafter alter the conditions of the membership or introduce other innovations upon the subject of slavery which shall conflict with the existing rights, privileges and interest of its members in slaveholding states and territories, then two-thirds of the male members of full and lawful age who may worship in said lot or piece of ground hereby conveyed, being present and voting in favor of same, shall have full power to place the said lot or piece of ground, with the house or

houses or places of worship erected thereon, under the jurisdiction and control of the Methodist Episcopal Church, South." \* \* \*

A provision then follows providing for the succession in the trust by the selection of new trustees as those named in the deed or their successors should die or relinquish their trust.

In 1806, acting under the provisions of Ch. 3 of the Acts of 1802, a corporation had been attempted to be created by the name of "The Trustees of Zion Chapel in Cambridge". Upon the execution of the deed by Muir in 1845 a church building was erected upon a portion of the lot and two small portions of it were sold. In the church edifice so erected the congregation organized under the name of "The Trustees of Zion Chapel in Cambridge" met for worship from that time until the building was destroyed by fire in 1910. Thereafter the trustees of Zion Chapel in Cambridge, who were the successors of the trustees named in the deed, contracted to sell the land to the appellants, who refused to comply with the terms of the contract on the ground that they could not be given a good, merchantable title.

In view of the numerous decisions in this State with regard to similar deeds, it it unnecessary to discuss at length the various questions which have been raised in the briefs of the counsel. The agreed statement of facts discloses that there has never been the legislative sanction given to the deed of 1845, as required by the Declaration of Rights (1776), Art. 34, and the case is therefore an almost exact parallel to the case of *The Trustees of Zion Church* v. *Hilken,* 84 Md. 170, in which a deed to trustees for the benefit of the church was held void for the lack of such assent. And the same principle has been re-affirmed as recently as the case of the *Regents* v. *Calvary Church,* 104 Md. 635, and *Dickerson* v. *Kirk,* 105 Md. 638. It must be held in conformity with those decisions that the deed of John Muir and others to

Samuel Corkran was void.   It is immaterial, therefore, whether the deed was in violation of the rule against the creation of perpetuities, or whether regarded as a deed creating a trust, the trusts attempted to be created were so indefinite as to be unenforceable, and the deed void for this reason.

The evidence in this case shows conclusively that from 1846 till 1910, The Trustees of Zion Chapel in Cambridge had been in the open, notorious and undisputed possession of the lot in question, a period of more than sixty years. A good title had therefore become vested in those trustees, a title which was perfect as against all persons not under legal disabilities.   The valid existence of the corporation is called in question on the ground that the original plan or certificate is not shown to have been recorded among the proper records of Dorchester county, within the period of time fixed by law.   This was sought to be cured by the enactment of Chapter 756 of the Acts of 1910 (p. 83), which provided for the recording after the time prescribed of the original certificate.   It was assumed by the parties in this case that the plan or certificate in the possession of the Trustees of Zion Chapel was a copy of the original plan, and as the Act of 1910 makes provision only for the recording of the original, the General Assembly of 1912 by Chapter 218 made provision for the recording of a copy of the plan. This was passed subsequent to the execution of the contract of sale in this case, and it is urged upon this Court that the Act of 1912 can not have any retro-active effect.   The plan or certificate appears in the minute book of the appellee; it is spoken of by the witnesses as being a copy, but it might with equal propriety have been treated as the original.   It appears in regular chronological order in an original record book of the church organization, and the acknowledgment in full is above the names of Levin Woolford and Samuel Brown, which are identified by the clerk of the Circuit Court for Dorchester county, from the test book in his custody. as being the genuine signature of those two former justices of the peace.   If this were a mere copy of the plan of agree-

ment or certificate intended for the records of the church, no reason is apparent why it should have borne the original signatures of the justices, and if there was an additional copy prepared, intended for record, this was at least a duplicate original by reason of its execution as already detailed. It would, therefore, have been within the terms of the Act of 1910, in as much as this plan of agreement or certificate was recorded in June, 1891. But if it be assumed that it was a copy merely of an original which has been lost, how is the situation altered? According to the testimony, there never was in Dorchester county any such record or even record book as that specified in the Act of Assembly. Manifestly, it would be most inequitable to tell the appellee that because the clerk of the Court of that county had neglected to provide the opportunity for complying with the statute with respect to recording its certificate, that it had not and never had had any legal corporate existence. In the view we take of the plan or certificate in the present case, it was fully covered by the provisions of the Act of 1910, and The Trustees of Zion Chapel in Cambridge were fully competent to convey a title.

By the decree of the Circuit Court the appellants were required to pay interest on the unpaid balance of the purchase money from the first day of November, 1910, and from this portion of the decree the appellant asks to be relieved. Under the circumstances of this case these proceedings were necessary to afford the appellants a good and marketable title, and this request is both reasonable and equitable. *Leviness* v. *Consol. Gas Co.,* 114 Md. 559. They should be charged with interest only from the date of the decree below, September 25th, 1912.

By the decree below the appellants were ordered to pay to the appellee, or bring into Court the unpaid balance of the purchase money, and the decree then proceeds and provides that unless they shall do so by a date named, that the property shall be sold by public sale, appoints a trustee to

make such sale, and prescribes the terms. Upon what theory these provisions were incorporated in the decree, it is difficult to understand. The bill filed was one for the specific performance of a contract, the prayer is, that it may be required to be specifically performed, no other relief is asked, and there is no allegation that the appellants are either unable or unwilling to perform their contract when they can be certain of receiving that for which they contracted. No evidence was given upon which the jurisdiction of the Court to order a sale could be based. This portion of the decree was manifestly erroneous under the circumstances of the case at the time it was passed, and to this extent also the decree appealed from must be reversed.

The decree of the Court below will accordingly be affirmed in part and reversed in part, and the case remanded to the end that the decree heretofore passed may be modified in conformity with this opinion.

> *Decree appealed from affirmed in part and reversed in part, and cause remanded to the end that the decree heretofore passed may be modified in accordance with the foregoing opinion; the costs below to be paid by the appellee, each party to pay their own costs in this, Court.*