ROGED, INC. ET AL. *v.* EDGAR H. PAGLEE

[No. 157, September Term, 1976.]

*Decided May 4, 1977.*

*Motion for reconsideration filed May 24, 1977; denied May 31, 1977.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Jeffrey M. Axelson,* with whom were *Saul M. Schwartzbach* and *Schwartzbach & Wortman* on the brief, for appellants.

*Ronald A. Baradel,* with whom were *Hartman & Crain* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

This appeal, from two orders of the Circuit Court for Anne Arundel County, was entered in the Court of Special Appeals. We granted certiorari before the matter came on for hearing in that court.

The genesis of the dispute came about when Edgar H. Paglee and Roger D. Bonney, each the owner of 50% of the stock of Roged, Inc. (Roged, or the Company), a company engaged in the business of selling and leasing materials handling equipment, had serious disagreements with respect to the management of the Company.[1] In November, 1974, Paglee filed a bill of complaint in the Circuit Court for Anne Arundel County against Roged, its officers and directors (except Mrs. Paglee) and one employee for the dissolution of Roged and for injunctive and declaratory relief.

Injunctive relief was granted Paglee, pending trial of the case, which was scheduled to begin on 21 April 1975. When the case came on for hearing on an amended bill of complaint and answer, counsel agreed to the entry of the following consent decree:

> "It is this 21st day of April, 1975, by the Circuit Court for Anne Arundel County, with the concurrence of all parties as indicated by the signatures of their respective counsel,

---

1. In October, 1974, a deadlock developed among the stockholders of the Company, and it became impossible to change the composition of the board of directors, of which Mr. and Mrs. Bonney and Mr. and Mrs. Paglee were members. The disagreement was largely the result of successive increases in Mr. Bonney's salary, placing Mrs. Bonney on the Company's payroll, the payment of premiums on Mr. Bonney's insurance policies with corporate funds, and payment from Company funds of fees for legal services rendered its officers and directors in this litigation. Bonney had attempted to resolve this by terminating the employment of Mr. and Mrs. Paglee as officers of the Company, and by having the Company enter into an agreement for the sale of additional stock to a new employee, with the result that Paglee would have become a minority stockholder. Previously, Bonney had suggested the Company redeem Paglee's stock out of capital surplus for $4,172.50.

"ORDERED, that these proceedings shall forthwith be referred to the Court Auditor for determination of the current value of the one hundred (100) shares of stock of plaintiff, Edgar H. Paglee, in Roged, Inc. in accordance with the following criteria:

"1. The value of the stock shall be determined as if dissolution of the corporation had been decreed on April 21, 1975.

"2. All of the 'commission backlog' of Roged, Inc. found to exist on April 21, 1975, as well as the proceeds, if any, of sealed bids submitted by Roged, Inc. on or before April 21, 1975, shall, for the purposes of the Auditor's account, be considered as an account receivable of Roged, Inc.

"3. The accounts receivable stated above in paragraph 2 shall be reduced by the Auditor by reason of any applicable federal and/or State taxes to be paid by Roged, Inc. on said accounts receivable, as well as the proper amount allocable as the cost of administering said accounts receivable to a successful conclusion, said cost of administration to be determined by past costs of administration and/or current costs adequately demonstrated to the satisfaction of the Auditor.

"4. The Auditor, in determining the current value of plaintiff's stock, shall also consider (upon information to be submitted in letter form to the Auditor by counsel of record) and pass upon the necessity, legality, and validity of the following expenditures heretofore made by Roged, Inc.:

"(a) Payment of counsel fees and expenses of litigation of all named defendants by the corporation.

"(b) Purchase from corporate funds of the premiums on life, major medical, and income protection policies on behalf of defendant, Roger D. Bonney.

"(c) Payment by the corporation of any salary in excess of $2000.00 per month to defendant, Roger D. Bonney.

"5. The Auditor, in determining the current value of plaintiff's stock, shall also consider (upon information to be submitted in letter form to the Auditor by counsel of record) and pass upon the issue of whether or not either of the following are legitimate accounts payable of Roged, Inc.:

"(a) $11,460.00 'advance commissions' to Litton Unit Handling Systems.

"(b) Approximately $1,900.00 'advance commissions' to Elliott Manufacturing Company.

"AND, IT IS FURTHER ORDERED that defendants, Roged, Inc. and Roger D. Bonney, shall, commencing April 22, 1975, set up a separate trustee account in which the accounts receivable set forth in paragraph 2 above shall be deposited when and as received; and

"IT IS FURTHER ORDERED that defendants, Roger D. Bonney and Wayne F. Byrd, shall promptly and from time to time furnish to the Court Auditor (with copies to counsel for plaintiff) any and all corporate records or information required by the Auditor to properly state his account, and

"IT IS FURTHER ORDERED that defendant, Roged, Inc., shall be allowed to continue doing business, and that, commencing April 22, 1975, defendants, Roged, Inc. and Roger D. Bonney, shall set up and maintain separate books of account for all business and income generated from and after said date, and

"IT IS FURTHER ORDERED that the injunction previously issued in these proceedings shall remain in full force and effect pending a final decree from this Court, and

"IT IS FURTHER ORDERED that defendant,

Roger D. Bonney, shall forthwith submit to this counsel a listing of all pending bids, the name of the manufacturer, the agency to which the bid has been submitted, and the date on which the bids are to be opened, and

"IT IS FURTHER ORDERED that the value of plaintiff's stock, as finally determined by the Auditor, shall be reduced to final judgment as of April 21, 1975, and

"IT IS FURTHER ORDERED that, upon the passage of a final decree in these proceedings, plaintiff, Edgar H. Paglee, shall place his stock certificate in escrow with William A. Franch, Esq., until said stock is finally redeemed by the corporation or its designee at the value stated by the Auditor and ratified by this Court."

In September, 1975, the Auditor filed his report which determined that Paglee's stock, at 21 April 1975, had a value of $33,138.35. Exceptions were filed in behalf of Roged and the individual defendants, as well as by Paglee. After a hearing on the exceptions, the chancellor (Childs, J.) remanded the case to the Auditor for a restatement of his account, and after further hearings, an order was entered on 14 May 1976 determining that the value of Paglee's stock at 21 April 1975 was $41,191.18, to which should be added interest and costs. A monetary judgment was entered in Paglee's favor against all defendants in that amount.

The defendants then moved for a review of the consent decree of 21 April 1975 and the order of 14 May 1976, which was denied on 29 June 1976, after hearing by another judge (Hopper, J.) of the same court. It was from the orders of 14 May 1976 and 29 June 1976 that this appeal was taken.

It seems that Roged and the individual appellants concede that the initial determination of the court Auditor that Roged had a net worth of $28,169.84 on 21 April 1975 is correct. They challenge, however, the adjustments made by the Auditor and the court to reflect the provisions of the

consent decree.[2] In support of this they mount a many faceted attack, which we shall consider in the order presented.

(i)

The court erred in not allowing the taking of testimony on the ambiguity in construction of the consent decree.

At the outset, it must be recognized that the consent decree was the product of negotiations between the parties. It is well settled that Maryland follows the objective test in the interpretation of contracts, *Billmyre v. Sacred Heart Hosp.*, 273 Md. 638, 642-43, 331 A. 2d 313, 316-17 (1975); *Kasten Constr. v. Rod Enterprises*, 268 Md. 318, 327-29, 301 A. 2d 12, 17-18 (1973); *U.S.I.F. Triangle v. Rockwood Dev. Co.*, 261 Md. 379, 383-84, 275 A. 2d 487, 489-90 (1971); *Slice v. Carozza Prop., Inc.*, 215 Md. 357, 368, 137 A. 2d 687, 693 (1958) and that the application of this test means that where the language is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed: not what the parties intended the contract to mean, but what a reasonable person in the position of the parties would have thought it meant, *Kasten Constr., supra*, 268 Md. at 328-29. We have extended this principle to the interpretation of judicial decrees, *Monticello v. Monticello*, 271 Md. 168, 173, 315 A. 2d 520, 523 (1974), *cert. denied*, 419 U. S. 880 (1974). *See Rosher v. Superior Court*, 9 Cal. 2d 556, 560, 71 P. 2d 918, 920 (1937). We find nothing ambiguous in the decree. If, as Roged contends, it failed to provide for certain contingencies, this was a void to be filled by the draftsmen, not by the courts.

---

2. Roged's books were kept on a "cash basis" accounting method rather than an "accrual" accounting method. Therefore, the net worth per books would include only transactions which had only been reduced to cash payments or receipts and not those which were still receivables or payables. Consequently, in valuing the corporation it became quite important to calculate the net profit on the various receivables that had to be administered.

### (ii)

The court below erred in disallowing, for valuation purposes, the expenditures made by Roged for legal fees in behalf of all of the defendants.

Maryland Code (1957, 1973 Repl. Vol.) Art. 23, § 64 (now Code (1975), Corporations and Associations Article § 2-418) contain provisions governing the indemnification of the officers, directors and employees of a corporation. Generally speaking, subsection (d) of the former, and subsection (e) (2) of the latter condition indemnification only upon: a majority vote of a quorum of directors not parties to the suit; a written opinion of independent legal counsel; or, upon a vote of the stockholders.

As Paglee argues, quite correctly, we think, that all of the six directors except Paglee and Mrs. Paglee were parties defendant, so that the first condition could not be met; no written opinion of independent legal counsel was produced, nor could a majority vote of stockholders be obtained. Moreover, the provision of Art. XI of Roged's by-laws, upon which Roged and the individual appellants pin their hopes, was never introduced in evidence below and cannot be considered here, Maryland Rule 885.

In his brief, Paglee concedes that it is no concern of his whether litigation expenses of $8,602.00 are ultimately paid by Roged. Rather, his concern was that they not be charged in determining the value of his stock.

### (iii)

The lower court erred in not finding that the advance commissions from Litton Unit Handling Systems are liabilities of Roged and that monies should be withheld for their payment.

The short answer to this contention is that while Litton had paid to Roged some $11,460.00 in advance commissions, the advance had been made in consideration of certain undertakings by Roged, some of which had already been

performed. Moreover, the deposition testimony of Litton's marketing vice president, Lloyd P. Robertson, was that Litton would not sue Roged to recover the $11,460.00; the sum was not carried on Litton's books in April, 1975, as an account receivable, and if Roged were to cease representing Litton, according to Robertson, Litton would "forget" the $11,460.00.

(iv)

The lower court erred in not finding that accounts receivable are a contingent asset of Roged, and, on dissolution, where the contingency of payment is remote, the amount should be deducted from the value of Roged.

This contention relates primarily to a "commission backlog," *i.e.*, commissions which had been earned, booked, but not collected on 21 April 1975. Paragraph 2 of the consent decree clearly contemplated that these should be taken into account as accounts receivable in valuing Paglee's interest, subject only to an adjustment for Federal and State income taxes thereon and the cost of "administering" the accounts "to a successful conclusion." [3]

The chancellor made the following findings of fact regarding these accounts:

"The following 'bad debts' written off by the defendant Byrd (Roged's accountant) after April 21, 1975 were to be added back to the book income of [Roged] in valuing [Paglee's] stock. As those items had never before been written off by [Roged], payments were (and have been) made by [Roged's] customers on those accounts, no logical explanation was made at the hearing to justify such writeoffs, and they had not in fact been written off by

---

[3] Roged's accountant estimated the cost of "administering" these accounts as 82.42%; Paglee's at 44.5%. Finally, a figure of 66.7% was agreed upon, and adopted by the court.

[Roged] on April 21, 1975, the date of the consent decree."

We cannot regard these findings as clearly erroneous, Rule 886. Moreover, the consent decree mandated no different treatment.

### (v)

The lower court erred in not allowing the deduction of insurance premiums paid in behalf of Roger D. Bonney, the president of Roged, from the retained value of Roged.

Both the court Auditor and the chancellor disallowed $1,166.00 paid by Roged in premiums paid for policies of disability, major medical or life insurance policies taken out for the benefit of Roger D. Bonney, the president of Roged, Bonney or members of his family having been named as beneficiaries of such policies.

We are wholeheartedly in accord with this conclusion. This was neither "key man" insurance nor an aspect of a group insurance plan as the terms are ordinarily understood. While this corporation may have had an insurable interest in the life of an officer, for purposes of valuing the stock of a closely held corporation such as Roged, in the absence of an agreement making this a part of the officer's compensation (and apparently here there was none), premiums on such policies are properly payable from corporate funds only if the corporation is the beneficiary, *Penn Mut. Life Ins. Co. v. Bank of America,* 5 Cal. 2d 288, 54 P. 2d 453 (1936); *Jansen v. Tyler,* 151 Ore. 268, 49 P. 2d 372 (1935); 19 Am.Jur.2d *Corporations* § 1056 at 510 (1965); Annot., 56 A.L.R.3d 1086 at 1090, 1097-98 (1974).

### (vi)

The lower court erred in not finding that the contingent liabilities of Roged resulting from the benefits received under a quasi-contract should reduce the value of Roged.

The thrust of this contention, while not succinctly stated, is that when Bonney, the president of Roged, left his former employer, J. J. Broderick Co., Inc., where he had worked as a salesman, he brought certain of his (and Broderick's) customers with him. Sales to these customers generated a substantial amount of income for Roged in the early years of Roged's operation.

At the time of Bonney's termination of his employment with Broderick, there remained commissions owed by Broderick to Bonney in the approximate amount of $60,000.00, for which Bonney instituted suit against Broderick. Broderick apparently counter-claimed for an equivalent amount in damages against Bonney, on the theory that Bonney had wrongfully alienated its customers. While this litigation had not been resolved at the time of the consent decree, was not referred to in the decree, nor was the potential liability of Bonney reflected on Roged's books, Roged argues that when its stock was valued, this liability should have been taken into account, since Roged had benefited from sales to customers brought to Roged by Bonney.

Relying on Rule 886, we accept the chancellor's disposition of this claim:

> "In valuing [Paglee's] stock, no consideration was to be given to Defendant Roger D. Bonney's claim of approximately $60,000.00 against [Roged] (which claim arose out of litigation with his former employer), because no suit had been filed prior to April 21, 1975 against [Roged], the original suit between defendant Bonney and his former employer was settled by compromise rather than judgment and there was no consideration to [Roged] arising from Defendant Bonney's alleged improper solicitation of his former employer's clients, there was no approval by [Roged's] Board of Directors, and there existed no indemnity agreement between Defendant Bonney and [Roged]."

For the reasons stated, we shall affirm the orders entered below. In view of the result which we reach, we find it unnecessary to consider Paglee's motion to dismiss, based on Rule 831 g.[4] In the preparation of this opinion, however, we have endeavored to confine our consideration to material contained in the record.

*Orders appealed from affirmed;*
*costs to be paid by appellants.*

---

4. Maryland Rule 831 c. 4 contemplates that an appellant's brief shall rely on facts established by the record.