EASTERN ENVIRONMENTAL ENDEAVOR, INC.
ET AL. *v.* INDUSTRIAL PARK AUTHORITY
OF CALVERT COUNTY ET AL.

[No. 1148, September Term, 1979.]

*Decided May 8, 1980.*

The cause was argued before MASON, LISS and COUCH, JJ.

*Jack R. Cooper,* with whom was *Alan L. Fishbein* on the brief, for appellants.

*Allan S. Handen,* with whom were *Mark A. Singerman, Robert L. Gray* and *Handen & Singerman* on the brief, for appellees.

COUCH, J., delivered the opinion of the Court.

Eastern Environmental Endeavor, Inc. (EEE) and Joseph Huang, president of EEE, appellants, appeal the order of the Circuit Court for Calvert County granting appellee's, Industrial Park Authority of Calvert County (IPA), "motion to enforce settlement agreement." Pursuant to the order, judgment was entered against EEE in the amount of $15,000 and against Huang in the amount of $5,000.

The settlement agreement between appellants and appellee arose out of litigation concerning cost overruns in the construction of a water purification plant, waste water treatment plant and control building upon property owned by IPA. EEE and Huang provided engineering services and construction supervision on the job. In November of 1977 the general contractor, Southern Maryland General Contractors, Inc. (SMGC), filed an amended declaration against IPA for sums due it pursuant to the construction contract and for extra work performed by SMGC. IPA then filed an amended third party claim against EEE and Huang claiming that the third party defendants, appellants here, were liable for any damages suffered by IPA as a consequence of SMGC's suit.

Negotiations among the three parties' attorneys ensued and two settlement agreements, one between SMGC and IPA and another between IPA and EEE and Huang, were reached sometime in November, 1978. According to the motion to enforce the settlement agreement, IPA and EEE and Huang agreed to the following: IPA was to release EEE and Huang from any liability arising out of the subject

matter of the third party complaint; Huang was to pay IPA $2,000 in cash; Huang and his wife were to execute a confessed judgment note for $3,000 payable to IPA in three months; EEE was to execute a confessed judgment note for $15,000 payable to IPA on demand; and, finally, both EEE and Huang were required to release IPA from any liability resulting from claims contained in the third party claim. IPA did sign the release which relieved EEE and Huang of any liability arising from the third party complaint but, notwithstanding several attempts by IPA's counsel to obtain compliance, neither EEE nor Huang forwarded an executed release, releasing IPA of liability, the $2,000 in cash or the two confessed judgment notes. IPA, since compliance was apparently not forthcoming, filed a motion to enforce the settlement agreement. After a hearing on the motion at which IPA's counsel testified concerning the negotiation of both settlement agreements and appellants' failure to conform to the terms of the agreement with IPA, the trial court held the matter *sub curia* and subsequently filed an opinion and order which reduced the settlement agreement to judgment. In the opinion the trial court made two points relevant to this appeal. The trial court found that the settlement with EEE and Huang was made contemporaneously with the settlement between SMGC, the main suit plaintiff, and IPA. The trial court also found that it had jurisdiction to enforce, within the original proceedings between the third party plaintiff and the third party defendant, the agreement "the parties reached themselves for the purposes of avoiding trial," by reducing the agreement to judgment. Judgment was entered against EEE in the amount of $15,000, the same amount as the confessed judgment note required by the settlement. A $5,000 judgment was entered against Huang representing the $2,000 in cash and the confessed judgment note to be signed by Huang in the amount of $3,000.

On appeal EEE and Huang raise the following issues:

1. Did the trial court err in finding that a court of law possessed subject matter jurisdiction to rule upon a "Motion to Enforce Settlement Agreement"

which sought only equitable relief — i.e., specific performance of an agreement?

2. Did the trial court err in ordering relief inconsistent with that requested in the pleadings?

3. Did the trial court err upon the facts in finding that the settlement between Plaintiff and Defendant was predicated upon the ability of counsel for Defendant to finalize a settlement agreement with Third Party Defendants and that the two settlement agreements were entered into contemporaneously?

3a. Did the settlement of the Third Party claim between the Defendant and the Third Party Defendants lack consideration in that the Plaintiff and Defendant had entered into a settlement agreement prior thereto?

### (1)

IPA's motion to enforce the settlement agreement contains the following prayers for relief:

"1) That this Honorable Court pass an order requiring third party defendants to comply with the terms and conditions of the settlement agreement;

3) And for such other and further relief that this Honorable Court might deem necessary and just."

Appellants contend that the first prayer seeks specific performance, although it does not specifically characterize the relief as such, an equitable remedy which can only be granted by a Court of Equity, citing *Horst v. Kraft,* 247 Md. 455, 231 A.2d 674 (1967). Appellants' reliance on *Horst* is misplaced. In *Horst* the parties to a tort action reached an accord, prior to the filing of any suit, that the appellant, an artist, in satisfaction of appellee's tort claim would furnish appellee with a certain number of paintings. Upon appellant's failure to produce the paintings, appellee filed suit against appellant seeking damages for personal

injuries. Appellee then filed a motion for summary judgment upon the ground that there had been an accord but no satisfaction between the parties. The trial court granted the summary judgment for twenty works of art and directed the appellant to deliver those paintings already selected by appellee and supply a certain number of high quality paintings from which appellee could select the remaining paintings. The Court of Appeals reversed the trial court's ruling and remanded the matter for further proceedings, having found that certain material facts were in dispute. The Court also pointed out "that the lower court erroneously granted specific performance in the present case. Specific performance is within the sound discretion of a court of equity. [sic] (citation omitted) and as such is exclusively within the province of equity and cannot be obtained in a court of law." *Id.* at 459.

Several notable differences distinguish the present case from *Horst.* In the first instance, the law action in this case was filed before the settlement agreement was reached; in *Horst* the matter allegedly was settled prior to the instigation of the law action. The plaintiff in *Horst* had her choice of forums for enforcement of the agreement, she simply did not choose the proper one. A different matter, however, is presented with the settlement of an ongoing law action. One year after *Horst* the Court of Appeals announced a favorable policy with regard to the compromise or settlements of law suits in the interest of efficient and economical administration of justice and the lessening of friction and acrimony. *Chertkof v. Harry Weiskittel Co.,* 251 Md. 544, 550, 248 A.2d 373 (1968), *cert. den.,* 394 U.S. 974; *Clark v. Elza,* 286 Md. 208, 406 A.2d 922, 928 (1979). Obviously, it would not serve this policy to bind the hands of a trial judge in enforcing a settlement agreement merely because a motion to enforce can be interpreted to request an exercise of equitable jurisdiction in a case docketed on the law side. The single most distinguishing factor between this case and *Horst* is that the trial court did not exercise equitable powers. The lower court did not require that appellants furnish appellee with the confessed judgment

notes or the $2,000 in cash as the settlement agreement required. The trial court, however, did assess damages and entered a monetary judgment against both appellants in accordance with the third prayer for such other and further relief, which is certainly within the jurisdiction of a law court.

Although the Court of Appeals in *Chertkof* did not decide the precise question presented here, the Court apparently saw no difficulty with the entry of a money judgment based upon a settlement agreement between the parties. *Chertkof v. Harry Weiskittel Co., supra* at 549-50. A more recent Court of Appeals case involving a settlement agreement, *Clark v. Elza, supra,* while not directly addressing the propriety of a motion to enforce a settlement agreement in an underlying legal action, 406 A.2d at 924 n. 1, did hold that a settlement agreement is an executory accord and that a plaintiff in breach of the accord could not prosecute the underlying tort action. *Id.* at 927-28. In so holding the Court quoted with approval from *Warner v. Rossignol,* 513 F.2d 678 (1st Cir. 1975). The United States Court of Appeals held in *Warner* that:

> "... while the agreement to compromise was binding and enforceable against a defaulting party — barring plaintiff from proceeding with his original action in breach of the agreement — plaintiff did not entirely relinquish his original cause upon entering into the agreement of compromise. The tort action would only be conclusively terminated when the $6,000 was paid against delivery of the releases and dismissal stipulation; until then it remained in abeyance and *if defendant repudiated the settlement or committed a material breach of its terms, plaintiff could elect either to sue for $6,000 or to rescind and press forward upon the original cause.*" [Emphasis added.] *Id.* at 683, quoted in *Clark v. Elza, supra,* 406 A.2d at 927.

We understand this to be a clear indication from the Court of Appeals that entry of a monetary judgment upon a motion to enforce a settlement agreement in the underlying legal action is properly within the jurisdiction of the law court. Accordingly, we perceive no error in the trial court's order granting appellee's motion to enforce the settlement agreement.

(2)

Appellants also complain, much along the lines of their first argument, that the trial court erred in ordering relief inconsistent with that relief requested in the motion. Appellants insist that the prayer for an order requiring appellants' compliance with the settlement agreement is strictly a prayer for specific performance. Appellants cite *Mills v. Zion Chapel,* 119 Md. 510, 87 A. 257 (1913), for the proposition that the provisions of a circuit court decree and order were erroneous as not within the relief requested by the bill of complaint. The bill filed in *Mills* was one for specific performance, the prayer was that it may be required to be specifically performed, and no other relief was asked.

That is not the case here. Even were we to conclude that a request for compliance with a settlement agreement is tantamount to a request for specific performance and cannot have any other meaning, we do not believe the trial court was precluded from awarding damages. Appellants overlook the third prayer for such other and further relief as the court might deem necessary and just, a prayer which was not present in *Mills.* Accordingly, the award of damages was entirely consistent with this prayer for relief.

(3)

Appellants also take issue with the following factual finding of the lower court:

"The testimony adduced at the hearing clearly indicates that a settlement had been made with the third party defendants (EEE and Huang)

> contemporaneously with the settlement between the Industrial Park Authority and Southern Maryland General Contractors, Inc."

Appellants claim that this factual conclusion is not supported by the evidence and the trial court, therefore, clearly erred. Under *Md. R.* 1086 this Court must assume the truth of all the evidence and of all the favorable inferences fairly deducible from it tending to support the factual conclusion of the trial court. *Jacober v. High Hill Realty, Inc.,* 22 Md. App. 115, 321 A.2d 838 (1974); *Carling Brewing Co. v. Belzner,* 15 Md. App. 406, 291 A.2d 175 (1972). The attorney who negotiated the settlement agreement testified at the hearing on the motion to enforce that "(the settlement with SMGC) was a contemporaneous thing. It was about the same time. In fact it was really part of the package." On cross examination he gave the following response to a question asked by appellants' counsel:

> "We were negotiating both claims. As a matter of fact, the amount that was paid in that claim, part of the consideration that was taken into consideration by the Industrial Park Authority and actually the County Commissioners were aware of it because they would have had to finance this settlement, was whatever we could get from Mr. Huang and his corporation."

While the witness exhibited some confusion as to the exact date each settlement agreement was reached, this confusion relates to the credibility of the witness, which is a matter to be resolved by the trial court. *Md. R.* 1086. We believe that the attorney's testimony, despite confusion as to dates, constituted competent, material evidence which supports the trial court's conclusion that the agreements were made contemporaneously. *See Staley v. Staley,* 25 Md. App. 99, 335 A.2d 114 (1975).

## (3a)

Appellants claim that the third party litigation was terminated once SMGC and IPA settled and therefore, since

there was no forbearance to sue for a lawful claim, the settlement agreement was not supported by consideration. It is well established that forbearance to exercise a legitimate right or a claim is sufficient consideration to support an agreement. *Erie Ins. Exchange v. Calvert Fire Ins. Co.,* 253 Md. 385, 252 A.2d 840 (1969). We have no difficulty in concluding that appellee forebore pursuing a claim in this instance; the matter was in the course of litigation when the agreement was reached. Nor do appellants maintain that IPA's claim was not legitimate. Appellants rest their argument upon the unique nature of third party litigation. According to appellants, the requirement of *Md. R.* 315 that the liability of the third party defendant to the original defendant must be for all or a part of the claim of the original plaintiff against the original defendant, militates the conclusion that once the original claim was settled, there was no basis upon which to prosecute the third party claim and thus there could be no forbearance. The evidence, however, indicates that both agreements were negotiated contemporaneously and that IPA would not have settled with SMGC, the original plaintiff, if EEE and Huang had not also agreed to settle. IPA clearly did not jeopardize its ability to prosecute its claim against appellants EEE and Huang, since it did not settle either matter until an agreement was reached with both parties, and, therefore, IPA's forbearance constituted sufficient consideration to support the settlement agreement.

*Judgment affirmed.*
*Costs to be paid by appellants.*