505 A.2d 899

RAMSEY, INC., et al

v.

Sally A. DAVIS, et al.

No. 830, Sept. Term, 1985.

Court of Special Appeals of Maryland.

March 12, 1986.

Raymond G. Mullady, Jr. (Robert E. Powell and Smith, Somerville & Case, on brief), Baltimore, M. Bradford Moody (Larry E. Tanenbaum, Clinton R. Batterton and Akin, Gump, Strauss, Hauer & Feld, on brief), Washington, D.C., for appellants.

Sharon B. Benzil (Leonard E. Moodispaw and Blumenthal, Wayson, Downs & Offutt, P.A., on brief), Annapolis, for appellees.

Argued before BLOOM, KARWACKI and ROBERT M. BELL, JJ.

KARWACKI, Judge.

The issues in this appeal concern the effect of an order entered by the Circuit Court for Anne Arundel County with the consent of the parties following their settlement of a lawsuit. That suit had been brought by the appellees, Sally A. Davis and Pamela R. Moore, against the appellants, Ramsey, Inc. and Renault Marine Diesel, USA, Inc., as well as Penn Yan Boats, Inc.[1] to recover damages for breach of contract, breach of warranty, and negligence. Specifically, the appellees alleged that Ramsey sold them a defective 35 foot sport fishing boat. Penn Yan, the manufacturer of the boat, had equipped the vessel with twin 210 horsepower turbocharged Renault marine diesel engines. The defendants filed cross-claims against each other for indemnity and contribution.

On the morning that trial was to begin, December 11, 1984, counsel for the parties to the litigation advised the court that they had reached a settlement. We quote from the proceedings at that time:

THE COURT: ... I understand a settlement has been reached which you wish to put on the record.

MR. MOODISPAW: Your Honor, I'll let one of the defense counsel say what they think the settlement is. I

---

**1.** This defendant filed no appeal from the action of the trial court.

think I know it but they've been battling it out so I'll let them say it.

COURT: Alright. As long as somebody does.

(MR. SPRITZER?): Your Honor, the settlement ... I'm not sure what ... what exactly ... do you want.

MR. MOODISPAW: Well, we've agreed to a total settlement of a hundred and ten thousand dollars to be paid to the plaintiffs, forty-five thousand dollars to be paid immediately ... sixty-five thousand dollars to be paid when the boat in question is sold. If it's not sold by June 1st, 1985, the sixty-five thousand dollars becomes due and owing at that time regardless of whether the boat is sold.

COURT: Okay. Does everybody agree with all of that?

MR. BARTLETT: Yes, Your Honor.

COURT: Okay. Now, what do you want to put on between the defendants? Anything?

MR. BARTLETT: Excuse me?

COURT: Did you want to put anything on the record as between the defendants?

MR. BARTLETT: We want to dismiss all cross claims, Your Honor, and counterclaims. The counterclaim was already withdrawn or dismissed but we want to dismiss all counterclaims, as well.

COURT: Alright.

MR. MOODISPAW: Shall I prepare an order for all this?

COURT: It would be a good idea to prepare the order in the case.

Thereafter, the appellees' counsel prepared an order and submitted it to counsel for the appellants and for Penn Yan with his letter of December 13, 1984 which stated: "Enclosed please find an Order which reflects what was said before Judge Cawood on December 11, 1984. I also enclose a copy of the cover letter to him. Please contact me immediately if you wish the Order to be changed." When neither the appellants' counsel nor counsel for Penn Yan objected to the form of the order submitted, it was signed by the court on December 21, 1984. That order provided:

The parties to this matter, having appeared before this Court on December 11, 1984, and, having agreed to the terms of this Order, it is this 21st day of December, 1984, hereby ORDERED that:

1. Defendants shall pay to the Plaintiffs the sum of One Hundred Ten Thousand Dollars ($110,000.00), payable as follows:

A. Forty-five Thousand Dollars ($45,000.00) immediately and;

B. Sixty-five Thousand Dollars ($65,000.00) on the earliest of the following events: Sale of the ATOYOT, the boat which is the subject of this litigation, or June 1, 1985.

2. Court costs shall be divided evently [sic] among the parties to this case; that is, the Plaintiffs shall pay one-fourth of the Court costs and the Defendants shall each pay one-fourth.

3. All claims and counter-claims in the above captioned matter are hereby dismissed.

The order was memorialized by the clerk of the court in a docket entry of the same date which reads:

1984 Dec. 21 Order of Court filed. ORDERED that: 1. Defendants shall pay to the Plaintiffs the sum of One Hundred Ten Thousand Dollars ($110,000.00) payable as follows: A. Forty-five Thousand Dollars $45,000.00 immediately and; B. Sixty-five Thousand Dollars ($65,000.00) on the earliest of the following events; Sale of the ATOYOT, the boat which is the subject of this litigation, or June 1, 1985. 2. Court costs shall be divided evently [sic] among the parties to this case; that is, the Plaintiff shall pay one fourth. 3. All claims and counter-claims in the above captioned matter are hereby dismissed. (Copies to Messrs: Moodispaw, Bartlett, III, Mullady and Moody).[2]

---

2. Counsel representing all of the parties in this litigation.

Thereafter, Penn Yan reneged on the settlement that had been agreed upon, and on February 11, 1985 the appellees filed a motion asking that the court hold the appellants and Penn Yan in contempt of court for their failure to obey the court's order of December 21, 1984. On February 13, 1985, the appellants opposed that motion and also filed a motion asking the court to enforce the settlement agreement entered by the parties on December 11, 1984. The appellants and the appellees supported their respective motions with affidavits.

To the appellees' motion were attached the affidavits of each appellee and one from each of the attorneys representing the appellees. The appellants' motion was accompanied by affidavits from the two attorneys for Renault, the attorney who represented Ramsey, and the attorney for Penn Yan.

A review of those affidavits reveals that the participants in the settlement in dispute all agree that under its terms: the appellees were

(1) to receive $110,000;

(2) $45,000 was to be paid immediately;

(3) all three settling defendants were to contribute to the $45,000, but the plaintiffs and their counsel were unaware of how much each was to contribute;

(4) the balance of $65,000 was to be the sole responsibility of Penn Yan, payable when the ATOYOT was sold, but no later than June 1, 1985.

The dispute centered on whether the liability of the appellants and Penn Yan for payment of the first $45,000 of the agreed settlement amount was a joint and several obligation of each of the defendants or whether each defendant was obligated only to the extent of its agreed contribution to the initial $45,000 payment. On that issue the affiants who represented the appellants and Penn Yan in these settlement negotiations swore that the agreement reached on December 11, 1984 required that Ramsey and Penn Yan were each to contribute $17,000 of the initial

$45,000 payment to the appellees and that Renault would contribute the balance of $11,000. They flatly disavowed any agreement that the appellants would be jointly liable with Penn Yan on its obligation to contribute $17,000 to this initial payment, but they admitted that the issue of such joint and several liability had not been discussed with the appellees' counsel in reaching the settlement. The affidavits of the appellees' attorneys agreed that the issue of joint and several liability of the settling defendants was not discussed during settlement negotiations. They did state, however, that the appellees authorized the settlement reached with the understanding that such joint and several liability would exist. The affidavits of the appellees confirmed that understanding.

Without holding a hearing, the trial court on March 5, 1985 denied the appellees' motion for contempt, revised its order of December 21, 1984 to reflect that only Penn Yan was responsible for $65,000 of the $110,000 ordered to be paid to the appellees, and concluded that each appellant was jointly and severally liable along with Penn Yan for payment of the $45,000 due immediately to the appellees. Its order accompanying that written opinion provided:

ORDERED, that the Motion for Contempt be and it is hereby denied, and it is further

ORDERED, that the Order of December 21, 1984, be revised to read:

1. Defendants shall pay to the Plaintiffs the sum of One Hundred Ten Thousand Dollars ($110,000.00), payable as follows:

 A. Forty-five Thousand Dollars ($45,000.00) immediately and;

 B. Sixty-five Thousand Dollars ($65,000.00) on the earliest of the following events: Sale of the ATOYOT, the boat which is the subject of this litigation, or June 1, 1985. This is the sole obligation of Defendant Penn Yan.

2. Court costs shall be divided evenly among the parties to this case; that is, the Plaintiffs shall pay one-fourth of the Court costs and the Defendants shall each pay one-fourth.

3. All claims and counter-claims in the above captioned matter are hereby dismissed, and it is further

ORDERED, that the Clerk enter up this judgment on the appropriate records.

In appealing from the order of the court of March 5, 1985, the appellants present two questions:

1. Did the trial court err when it entered judgments against Renault and Ramsey more than two months after it entered an order "Dismissing all claims and counterclaims" in the proceeding?; and

2. Did the trial court err when it failed to implement the intent of the parties by entering consent judgments against Renault and Ramsey jointly and severally for forty-five thousand dollars?

The appellees have moved to dismiss this appeal. They argue that a final judgment concluding the litigation between the parties was entered on December 21, 1984, that no appeal from that judgment was filed within 30 days as required by Rule 1012, so that the court was without jurisdiction to conduct the proceedings which led up to its order of March 5, 1985.[3] The appellants' position on the first question they present also is premised on a lack of jurisdiction in the trial court to enter its March 5, 1985 order because of the voluntary dismissal of "all claims and counterclaims" by the appellees by virtue of their consent to the December 21, 1984 order. The threshold question

---

**3.** In their motion the appellees next urge dismissal arguing that no appeal lies from the consent judgment of December 21, 1984. As we will develop, we do not view this appeal to be from that action of the court. Lastly, the appellees insist that the appellants' noncompliance with Rule 1028 in preparing the record extract and with Rule 1031(c) in preparation of their brief requires dismissal. We disagree that such noncompliance is present in this case.

which we address is the effect of the December 21, 1984 order.

■ Under Rule 2–612, "[t]he court may enter a judgment at any time by consent of the parties." We conclude that a consent judgment was entered by the court's order of December 21, 1984. That order required the defendants to pay a sum certain to the plaintiffs, dismissed all claims between the parties, assessed court costs against the parties, and was recorded in the court's docket by the clerk as required by Rule 2–601. Rule 1–202(m) defines a "judgment" as "any order of court final in its nature." The language of the December 21st order is not susceptible of any construction which would indicate that any further action of the court was required to adjudicate the respective claims of the parties to the litigation.

Thus, the consent judgments entered on December 21st were unlike the settlement order which we recently reviewed in *Mitchell Properties v. Real Estate Title*, 62 Md.App. 473, 490 A.2d 271 (1985). In that case the litigants entered a settlement order with the court which provided: "The parties agree that if costs and damages have not been paid within thirty (30) days from today's date judgment will be entered for Plaintiff against Alan Greenblatt and Defendants Marcus for $9,333 [and] against 3rd party Butler for $4,667." *Id.* at 478, 490 A.2d 271. Several days later the plaintiff unsuccessfully moved to vacate that settlement order. The plaintiff's motion for reconsideration of that denial was also rejected and an appeal to this Court followed. We held that the settlement order did not constitute a judgment. Judge Rosalyn B. Bell speaking for the Court reasoned:

> Although a settlement order resembles a final judgment, it is not the same. A settlement agreement is a contract which the parties enter into "for the settlement of a previously existing claim by a substituted performance." 6 Corbin on Contracts, § 1278 at 124 (1962); *Clark v. Elza*, 286 Md. 208, 406 A.2d 922 (1979). When this agreement is entered with the court, it is termed a

settlement order; however, it is not a court order. Rather, it is a compromise between the parties, which they submit to the court to stay the proceedings in the case. *Clark v. Elza, supra; Eastern Environ. v. Industrial Park,* 45 Md.App. 512, 413 A.2d 1355 (1980).

> \* \* \* \* \* \*
>
> A settlement order is presumed to be an executory accord, *Clark v. Elza, supra; Eastern Environ. v. Industrial Park, supra,* which is defined as "an agreement for the future discharge of an existing claim by a substituted performance." *Clark v. Elza,* 286 Md. at 214, 406 A.2d 922, quoting 6 Corbin on Contracts, § 1268 at 71. Until the agreement is performed, it holds the original claim in abeyance. *Id.* In any event, it remains a binding contract which can be enforced against a defaulting party. *Id.; Eastern Environ. v. Industrial Park,* 45 Md.App. at 517, 413 A.2d 1355. *If the court reduces the settlement order to a money judgment, it becomes a final judgment to the extent the underlying agreement address [sic] the respective claims of the parties. See Chertkof v. Weiskittel Co.,* 251 Md. 544, 248 A.2d 373 (1968). (Emphasis supplied.)

*Id.* at 482–83, 490 A.2d 271.

The consent judgment entered on December 21st was revised on March 5, 1985 to reflect the several obligation of Penn Yan as to the payment of $65,000. The mistake in the original judgment which indicated joint and several liability of the appellants with regard to the $65,000 obligation was brought to the court's attention by the parties in the pleadings filed on February 11 and 13, 1985. No one questioned the clerical nature of that mistake made in the consent judgment of December 21, 1984, and the court was empowered to correct such a mistake "at any time." Rule 2–535(d).

At the same time the court refused to revise the consent order which it executed on December 21, 1984 to reflect a judgment for $45,000 in favor of the appellees at

variance with the language of that order. We view this appeal as one from that action of the court and not from the consent judgment rendered by the court on December 21, 1984. Accordingly, the motion of the appellees to dismiss this appeal is denied. For the same reason we reject the appellants' first argument premised on the court's entry of a judgment against them on March 5, 1985. No judgment was entered against the appellants on that day. Rather, the court declined to revise the $45,000 consent judgment rendered against them and Penn Yan on December 21, 1984.

Treating the appellants' motion to enforce the settlement agreement as a motion pursuant to Rule 2–535, it has no merit. Since more than 30 days had expired from the entry of the consent judgment, the appellants could only seek revision thereof based on fraud, mistake, or irregularity pursuant to subsection (b) or clerical mistake under (d) of the Rule. There is no suggestion of any fraud, irregularity, or clerical mistake. Rather, the appellants argue that extrinsic evidence should have been considered by the court to determine whether they are liable jointly with Penn Yan on its agreed contribution to the $45,000 judgment in favor of the appellees.

 A consent judgment, since it is the product of negotiations, is subject to construction as a contract. *Roged, Inc. v. Paglee,* 280 Md. 248, 254, 372 A.2d 1059 (1977); *Monticello v. Monticello,* 271 Md. 168, 173, 315 A.2d 520, *cert. denied,* 419 U.S. 880, 95 S.Ct. 145, 42 L.Ed.2d 121 (1974). In *Roged, Inc.,* affirming a trial court's refusal to admit extrinsic evidence to explain the intention of the parties to a consent decree, Judge Singley explained:

> It is well settled that Maryland follows the objective test in the interpretation of contracts, *Billmyre v. Sacred Heart Hosp.,* 273 Md. 638, 642–43, 331 A.2d 313, 316–17 (1975); *Kasten Constr. v. Rod Enterprises,* 268 Md. 318, 327–29, 301 A.2d 12, 17–18 (1973); *U.S.I.F. Triangle v. Rockwood Dev. Co.,* 261 Md. 379, 383–84, 275 A.2d 487, 489–90 (1971); *Slice v. Carozza Prop., Inc.,* 215 Md. 357,

368, 137 A.2d 687, 693 (1958) and that the application of this test means that where the language is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed: not what the parties intended the contract to mean, but what a reasonable person in the position of the parties would have thought it meant, *Kasten Constr.*, *supra*, 268 Md. at 328–29 [301 A.2d 12]. We have extended this principle to the interpretation of judicial decrees, *Monticello v. Monticello*, 271 Md. 168, 173, 315 A.2d 520, 523 (1974), *cert. denied*, 419 U.S. 880 [95 S.Ct. 145, 42 L.Ed.2d 121] (1974). *See Rosher v. Superior Court*, 9 Cal.2d 556, 560, 71 P.2d 918, 920 (1937). We find nothing ambiguous in the decree. If, as Roged contends, it failed to provide for certain contingencies, this was a void to be filled by the draftsmen, not by the courts.

280 Md. at 254, 372 A.2d 1059. The consent judgment *sub judice* provided in pertinent part:

1. Defendants shall pay to the plaintiffs the sum of one hundred ten thousand dollars ($110,000.00) payable as follows:

 A. Forty-five thousand dollars ($45,000.00) immediately and; . . . .

This language is unambiguous and imposed a joint and several obligation upon all three defendants named in the consent judgment. The subjective understanding of the consenting parties as to what was being agreed upon is therefore immaterial. As the Court of Appeals pointed out in *Traylor v. Grafton*, 273 Md. 649, 684–85, 332 A.2d 651 (1975):

When two or more promisors agree to pay a sum of money under a contract the amount promised is the promise of all and the promisee is entitled to a joint judgment against them, or judgments against them severally. In satisfying such judgments execution may be levied upon the goods of any one of them. *See* 4 A. Corbin, Contracts, §§ 924, 925, 928, 929 (1951). Even though the judgment may be joint, the payment of the

entire judgment might be satisfied from any one of them. *See In re Hoge's Estate,* 188 Pa. 527, 41 A. 621 (1898). Our holdings are in accord. *See Shriver v. Carlin & Fulton Co.,* 155 Md. 51, 65, 141 A. 434, 440 (1928). *See also* 46 Am.Jur.2d *Judgments* § 903 (1969); 30 Am.Jur.2d *Executions* § 101 (1967); and 17A C.J.S. *Contracts* § 353 (1963).

Therefore, it would have been improper to admit evidence extrinsic to the consent judgment to explain its meaning. We perceive no error on the part of the court in declining to revise the consent judgment so as to relieve the appellants from the joint and several obligation clearly imposed upon them thereunder.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY THE APPELLANTS.